Opinion
MOSK, J.
Section 8 of the National Bank Act of 1864, as later incorporated as amended in section 5136 of title 62 of the Revised Statutes of 1878, and as presently codified at section 24, paragraph Fifth, of title 12 of the United States Code (hereafter sometimes section 24, Fifth), which is its common designation, grants a national bank the power to “dismiss” any of its officers “at pleasure” by its board of directors, including its “president, vice president, cashier, and other officers,”, and thereby bestows immunity from liability arising from its exercise (12 U.S.C. § 24, Fifth).
The California Fair Employment and Housing Act (hereafter sometimes FEHA), which is codified at section 12900 et seq. of the Government Code, is a state antidiscrimination statute that confers on employees a right against dismissal on certain grounds and creates a remedy for its violation.
Title VII of the Civil Rights Act of 1964 (hereafter sometimes Title VII), denominated “Equal Employment Opportunity,” which is codified at section 2000e et seq. of title 42 of the United States Code, and the Age Discrimination in Employment Act of 1967 (hereafter sometimes the ADEA), which is codified at section 621 et seq. of title 29 of the United States Code, are *154 federal antidiscrimination statutes that each confer on employees a right against dismissal on certain grounds and create a remedy for its violation.
We granted review to decide a question of the kind that, in Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1104 [282 Cal.Rptr. 841, 811 P.2d 1025] (hereafter sometimes Wells Fargo), we acknowledged was “important and difficult”: In the face of Title VII and the ADEA, does section 24, Fifth, preempt FEHA?
As we shall explain, we conclude that the answer that we must give is this: Yes and no. Section 24, Fifth, has been impliedly amended by Title VII and the ADEA. As impliedly amended by Title VII and the ADEA, section 24, Fifth, preempts FEHA to the extent that it conflicts, but it does not to the extent that it does not.
I
Ora Peatros filed a complaint for damages in the Superior Court of Los Angeles County against the Bank of America and C. Gordon Brown (collectively Bank of America or the bank). In this pleading, as subsequently amended, she alleged, in pertinent part, to this effect: The bank employed her as an officer, specifically, a vice-president, and assigned her to work as a branch manager subject to the supervision of Brown as a district manager. “[U]nder the guise of an alleged error” on her part, the bank, through Brown, demoted her from an officer to a nonofficer, and then terminated her altogether, on grounds including her race, which was African-American, and her age, which was 45 years at the time of demotion and 47 years at the time of termination. Relying, apparently, on California law alone, she asserted five causes of action. The first was for “breach” of an “implied-in-fact contract of employment.” The second was for “violation” of the California Fair Employment and Housing Act or FEHA. The third was for wrongful “termination ... in violation of public policy” as declared in FEHA. The fourth was for “breach” of a “covenant of good faith and fair dealing” “[i]mplied by law” in the contract of employment referred to above. The fifth and final was for “misrepresentation and deceit.”
Bank of America filed an answer to Peatros’s complaint as amended. In this pleading, it raised an affirmative defense based on section 8 of the National Bank Act of 1864, as codified at section 24, Fifth, of title 12 of the United States Code—to the effect that the provision granted a national bank the power to dismiss any of its officers at pleasure by its board of directors, and thereby bestowed immunity from liability arising from its exercise; that it was, in fact, a national bank; and that the provision preempted all of the *155 state law underlying Peatros’s causes of action, including FEHA, and hence removed their necessary support.
Not long thereafter, Bank of America filed a motion for summary judgment against Peatros’s complaint as amended. It claimed that there was no triable issue of material fact and that it was entitled to judgment as a matter of law based on section 24, Fifth, and its asserted preemption of all of the state law underlying her causes of action, including FEHA. It relied on Wells Fargo. In pertinent part, Wells Fargo holds that section 24, Fifth, requires a national bank to exercise its power to dismiss an officer, with resulting immunity, by its board of directors; that it prohibits the board to delegate the power; but that it allows the board to employ the power not only directly, by acting itself, but also indirectly, by authorizing or ratifying action by an agent. (Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at pp. 1094-1104.) In reliance thereon, the bank argued in favor of the applicability of section 24, Fifth, asserting that its board of directors employed its power to dismiss Peatros as an officer by ratification. The facts that it stated were undisputed included the following: It was a national bank. She was African-American. It appointed her, at 42 years of age, as an officer, specifically, a vice-president, by its board of directors, which, it appears, made the appointment itself or at least ratified a prior managerial appointment. About three years later, within a period of a single week, and at the hands of a single customer, she caused it to suffer losses in the amount of almost $135,000 when she approved for immediate credit, without any uncollected-funds hold, the deposit of a series of three checks in the amounts of $100,000, $20,000, and $15,000, which were drawn on out-of-state banks and later returned unpaid because they were not covered by sufficient funds. It then demoted her, at 45 years of age, from an officer, specifically, vice-president, to a nonofficer by its board of directors, which promptly ratified a prior managerial demotion in which Brown and perhaps others participated. The day after she was notified of the managerial demotion, she went out on an extended medical absence, during which she apparently received disability payments based on her salary prior to the managerial demotion. Bank policy provided for termination when an extended medical absence exceeded 24 consecutive months. In due course, her extended medical absence came to exceed such a period. The bank terminated her, at 47 years of age, by its board of directors, which promptly ratified a prior administrative termination mandated by the policy referred to above. It never recovered the almost $135,000 in losses that it had suffered.
Peatros opposed Bank of America’s motion for summary judgment against her complaint as amended. She denied what it claimed. But she did not contest the substance of the facts that it stated were undisputed. Relying on *156 Wells Fargo for her own part, she argued against the applicability of section 24, Fifth, asserting that the bank’s board of directors delegated its power to dismiss her as an officer.
After a hearing, the superior court issued an order granting Bank of America’s motion for summary judgment against Peatros’s complaint as amended, accepting its position and rejecting hers, and hence concluding that section 24, Fifth, preempts all of the state law underlying her causes of action, including FEHA, completely and in its entirety. It caused entry of judgment accordingly.
After Peatros filed a notice of appeal in the superior court, an appeal was docketed in the Court of Appeal for the Second Appellate District, and was later assigned to Division Five.
By a judgment announced in a two-to-one decision certified for publication, the Court of Appeal affirmed the judgment of the superior court. In a majority opinion, two justices subjected the superior court’s order granting Bank of America’s motion for summary judgment against Peatros’s complaint as amended to what was evidently independent review. On such review, they sustained the ruling. Determining that, in accordance with Wells Fargo, the bank exercised its power to dismiss her as an officer by its board of directors, which did not delegate the power but employed it by ratification, they concluded that section 24, Fifth, was indeed applicable. Declining to follow decisions including Marques v. Bank of America (1997) 59 Cal.App.4th 356 [69 Cal.Rptr.2d 154] (hereafter sometimes Marques), which had been handed down while the present appeal was pending, they also concluded that, even in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA completely and in its entirety, as well as, apparently, all of the other state law underlying the causes of action in question. In a dissenting opinion, one justice would have struck down the superior court’s ruling and reversed its judgment. Following decisions including Marques, she concluded that, in the face of Title VII and the ADEA, section 24, Fifth, does not preempt FEHA in any part or aspect whatsoever.
Peatros filed a petition for review. We granted her application. Subsequently, we specified as the sole question on review whether, in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA.
We now proceed to reverse the judgment of the Court of Appeal.
II
The question that we address on review, as stated above, is whether, in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA. In order to give an answer, we must advance step by step.
*157 A
The doctrine relating to the preemption of the law of one of the several states by that of the United States itself may be summarized as follows:
Clause 2 of article VI of the United States Constitution—the supremacy clause—declares that “Laws of the United States . . . shall be the supreme Law of the Land; and the judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
Ever since the decision in McCulloch v. Maryland (1819) 17 U.S. (4 Wheat.) 316, 427 [4 L.Ed. 579, 607], “it has been settled that state law that conflicts with federal law is ‘without effect.’ ” (Cipollone v. Liggett Group, Inc. (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407]; accord, Smiley v. Citibank (1995) 11 Cal.4th 138, 147 [44 Cal.Rptr.2d 441, 900 P.2d 690], affd. (1996) 517 U.S. 735 [116 S.Ct. 1730, 135 L.Ed.2d 25].)
Whether federal law preempts state law is fundamentally a question whether Congress has intended such a result. (E.g., Barnett Bank of Marion Cty., N.A. v. Nelson (1996) 517 U.S. 25, 30 [116 S.Ct. 1103, 1107, 134 L.Ed.2d 237]; English v. General Electric Co. (1990) 496 U.S. 72, 79 [110 S.Ct. 2270, 2275, 110 L.Ed.2d 65]; Cipollone v. Liggett Group, Inc., supra, 505 U.S. at p. 515 [112 S.Ct. at p. 2616]; Smiley v. Citibank, supra, 11 Cal.4th at p. 147; see, e.g., New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. (1995) 514 U.S. 645, 654-655 [115 S.Ct. 1671, 1676, 131 L.Ed.2d 695].)
The “starting presumption” is that Congress has not so intended. (New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., supra, 514 U.S. at p. 654 [115 S.Ct. at p. 1676]; accord, e.g., De Buono v. NYSA-ILA Medical and Clinical Services Fund (1997) 520 U.S. 806, 814 [117 S.Ct. 1747, 1751, 138 L.Ed.2d 21].)
Preemption of state law by federal law is found in “three circumstances.” (English v. General Electric Co., supra, 496 U.S. at p. 78 [110 S.Ct. at p. 2275]; accord, e.g., Smiley v. Citibank, supra, 11 Cal.4th at p. 147.)
First, there is so-called “express preemption”: “Congress can define explicitly the extent to which its enactments pre-empt state law.” (English v. General Electric Co., supra, 496 U.S. at p. 78 [110 S.Ct. at p. 2275]; accord, e.g., Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 31 *158 [116 S.Ct. at p. 1108]; Cipollone v. Liggett Group, Inc., supra, 505 U.S. at p. 516 [112 S.Ct. at p. 2617]; Smiley v. Citibank, supra, 11 Cal.4th at p. 147.)
Second, there is so-called “field preemption”: “[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.” (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2275]; accord, e.g., Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 31 [116 S.Ct. at p. 1108]; Cipollone v. Liggett Group, Inc., supra, 505 U.S. at p. 515 [112 S.Ct. at pp. 2616-2617]; Smiley v. Citibank, supra, 11 Cal.4th at p. 147.)
Third, there is so-called “conflict preemption”: “[S]tate law is pre-empted to the extent that it actually conflicts with federal law.” (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2275]; accord, e.g., Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 31 [116 S.Ct. at p. 1108]; Cipollone v. Liggett Group, Inc., supra, 505 U.S. at p. 516 [112 S.Ct. at p. 2617]; Smiley v. Citibank, supra, 11 Cal.4th at p. 147.) Such conflict must be “of substance and not merely trivial or insubstantial.” (New York Dept. of Social Services v. Dublino (1973) 413 U.S. 405, 423, fn. 29 [93 S.Ct. 2507, 2518, 37 L.Ed.2d 688].) It exists when it is “impossible ... to comply with both state and federal requirements” (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2275]; accord, e.g., Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 31 [116 S.Ct. at p. 1108]; Freightliner Corp. v. Myrick (1995) 514 U.S. 280, 287 [115 S.Ct. 1483, 1487, 131 L.Ed.2d 385]) or when state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives” underlying federal law (Hines v. Davidowitz (1941) 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581]; accord, e.g., Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 31 [116 S.Ct. at p. 1108]; Freightliner Corp. v. Myrick, supra, 514 U.S. at p. 287 [115 S.Ct. at p. 1487]). Although “state law is pre-empted to the extent that it actually conflicts with federal law” (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2275]), it is preempted only to that extent and no further (Dalton v. Little Rock Family Planning Services (1996) 516 U.S. 474, 476 [116 S.Ct. 1063, 1064, 134 L.Ed.2d 115] (per curiam)).[1]
“Consideration of issues arising under the Supremacy Clause ‘start[s] with the assumption that the historic police powers of the States *159 [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.’ ” (Cipollone v. Liggett Group, Inc., supra, 505 U.S. at p. 516 [112 S.Ct. at p. 2617], quoting Rice v. Santa Fe Elevator Corp. (1947) 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447]; accord, California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc. (1997) 519 U.S. 316, 325 [117 S.Ct. 832, 838, 136 L.Ed.2d 791]; Smiley v. Citibank, supra, 11 Cal.4th at p. 148.) The “ ‘ “historic police powers of the States” ’ ” extend to employment (De Canas v. Bica (1976) 424 U.S. 351, 356 [96 S.Ct. 933, 936-937, 47 L.Ed.2d 43]), including discrimination therein (Railway Mail Assn. v. Corsi (1945) 326 U.S. 88, 97 [65 S.Ct. 1483, 1489, 89 L.Ed. 2072]). They extend as well to banking, including national banking. (Smiley v. Citibank, supra, 11 Cal.4th at p. 148; see National State Bank, Elizabeth, N.J. v. Long (3d Cir. 1980) 630 F.2d 981, 985-986.) Indeed, “since” before the “passage of the . . . National Bank Act,” “regulation of [national] banking has been one of dual” “federal-state” “control.” (National State Bank, Elizabeth, N.J. v. Long, supra, 630 F.2d at p. 985; accord, Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 937 [216 Cal.Rptr. 345, 702 P.2d 503].)
B
The statute that we now call the National Bank Act of 1864 was enacted by Congress more than 135 years ago. Its purpose was, at bottom, “to facilitate ... a ‘national banking system . . .’” (Marquette Nat. Bank v. First of Omaha Corp. (1978) 439 U.S. 299, 315 [99 S.Ct. 540, 549, 58 L.Ed.2d 534]; accord, Smiley v. Citibank, supra, 11 Cal.4th at p. 150; see Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1089), a system “coextensive with the territorial limits of the United States, and with uniform operation within those limits” (Talbott v. Silver Bow County (1891) 139 U.S. 438, 443 [11 S.Ct. 594, 596, 35 L.Ed. 210]). Within this system, national banks are creatures of federal law. (E.g., First National Bank of Boston v. Bellotti (1978) 435 U.S. 765, 778 [98 S.Ct. 1407, 1416, 55 L.Ed.2d 707].) They have no powers beyond those that are enumerated or that are fairly incidental thereto. (See, e.g., First National Bank in St. Louis v. Missouri (1924) 263 U.S. 640, 658 [44 S.Ct. 213, 215-216, 68 L.Ed. 486].) “National banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States.” (Davis v. Elmira Savings Bank (1896) 161 U.S. 275, 283 [16 S.Ct. 502, 503, 40 L.Ed. 700]; accord, Farmers', etc. Nat. Bank v. Dearing (1875) 91 U.S. (1 Otto) 29, 33-34 [23 L.Ed. 196, 198-199]; Smiley v. Citibank, supra, 11 Cal.4th at p. 150.)
Section 8 of the National Bank Act of 1864, the ultimate source of section 24, Fifth, of title 12 of the United States Code, states that a national bank *160 “may elect or appoint directors, and by its board of directors appoint a president, vice-president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss said officers or any of them at pleasure, and appoint others to fill their places . . . .” (Act of June 3, 1864, ch. 106, § 8, 13 Stat. 101, italics added.)
As incorporated as amended in section 5136 of title 62 of the Revised Statutes of 1878, the proximate source of section 24, Fifth, the provision states, in virtually identical language, that a national bank “shall have power” “[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.” (Italics added.)
As presently codified at section 24, Fifth, the provision states, again in virtually identical language, that a national bank “shall have power” “to elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.” (12 U.S.C. § 24, Fifth, italics added.)
The purpose of what is now section 24, Fifth, has been recognized for more than a century—to promote national banks as institutions and to further their integrity and stability in appearance and reality.
In Westervelt v. Mohrenstecher (8th Cir. 1896) 76 Fed. 118, 122, the United States Court of Appeals for the Eighth Circuit uttered what has become the classic statement: “Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys. When it has once been secured, and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows. It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or a president of a bank, spreads through the community in which he lives, scares the depositors, and threatens immediate financial ruin to the institution. In such a case it is necessary to the prosperity and success—to the very existence—of a banking institution that *161 the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence. In our opinion, the provision . . . was inserted, ex industria, to provide for this very contingency.”
Today, more than 100 years later, the statement of the Westervelt court on the purpose of what is now section 24, Fifth, remains current. (See, e.g., Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1089; Mardula v. Rancho Dominguez Bank (1996) 43 Cal.App.4th 790, 793-794 [51 Cal.Rptr.2d 63]; Aalgaard v. Merchants Nat. Bank, Inc. (1990) 224 Cal.App.3d 674, 689 [274 Cal.Rptr. 81]; Mackey v. Pioneer Nat. Bank (9th Cir. 1989) 867 F.2d 520, 526; Alegria v. Idaho First Nat. Bank (1986) 111 Idaho 314, 316 [723 P.2d 858, 860].) The provision’s object is “to give” national banks the “greatest latitude possible to hire and fire their . . . officers” (Mackey v. Pioneer Nat. Bank, supra, 867 F.2d at p. 526), indeed, to allow them “to remove and replace” them “at will” (Mardula v. Rancho Dominguez Bank, supra, 43 Cal.App.4th at p. 793), in order to “maintain” their “stability” (Alegria v. Idaho First Nat. Bank, supra, 111 Idaho at p. 316 [723 P.2d at p. 860]), “protect[]” their “integrity” (Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 689), and “promote” their “welfare” (Alegria v. Idaho First Nat. Bank, supra, 111 Idaho at p. 316 [723 P.2d at p. 860]), all with an eye toward securing and preserving the “public trust” (Mackey v. Pioneer Nat. Bank, supra, 867 F.2d at p. 526). (See Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1089.)[2]
Considered in light of its purpose, section 24, Fifth, must be understood to operate both within the judicial sphere and also in the world at large.
In the world at large, section 24, Fifth, grants a national bank the power to dismiss any of its officers at pleasure by its board of directors. It does so *162 explicitly. In ipsissimis verbis, it states that a national bank “shall have power” “by its board of directors to . . . dismiss” any of its officers “at pleasure . . . .” (12 U.S.C. § 24, Fifth.) It expressly grants the greater power to dismiss a person who is an officer, it impliedly grants the lesser power to dismiss a person as an officer, that is, to “relieve” him “of his authority” to act as such (Sinclair, Employment at Pleasure: An Idea Whose Time Has Passed (1992) 23 U. Tol. L.Rev. 531, 541; see generally id. at pp. 532-546). It does not limit the power in question; indeed, it does not allow any such limitation, even by a national bank itself. (E.g., Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 689; Citizens Nat. Bank & Trust v. Stockwell (Fla. 1996) 675 So.2d 584, 586; Copeland v. Melrose Nat. Bank (1930) 229 A.D. 311, 313 [241 N.Y.S. 429, 430-431], affd. 254 N.Y. 632 [ 173 N.E. 898]; see, e.g., Westervelt v. Mohrenstecher, supra, 76 Fed. at pp. 122-123; Kemper v. First Nat. Bank in Newton, supra, 94 Ill.App.3d at pp. 170-171 [418 N.E.2d at p. 821]; but see Booth v. Old Nat. Bank (N.D.W.Va. 1995) 900 F.Supp. 836, 842-843 [holding, in substance, that the provision’s power may not be exercised contrary to its purpose]; Sargent v. Central Nat. Bank & Trust Co. (1991) 1991 Okla. 23 [809 P.2d 1298, 1301-1303] [same].) Hence, the power that it grants may be characterized as unlimited.
Within the judicial sphere, section 24, Fifth, bestows on a national bank immunity from liability arising from the exercise of its power to dismiss any of its officers at pleasure by its board of directors. It does so implicitly. “It is idle to say that” the provision “gives the power to” dismiss an officer, “without the right to do so. The grant of the power carries with it the untrammeled right to its exercise, free from penalty.” (Copeland v. Melrose Nat. Bank, supra, 229 A.D. at p. 313 [241 N.Y.S. at p. 430]; accord, Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1093; Mackey v. Pioneer Nat. Bank, supra, 867 F.2d at p. 526; see, e.g., Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at pp. 689-692; Kemper v. First Nat. Bank in Newton, supra, 94 Ill.App.3d at p. 170 [418 N.E.2d at p. 821] [stating that the provision “has been construed consistently to allow a national bank to discharge an officer without liability”]; but see Booth v. Old Nat. Bank, supra, 900 F.Supp. at pp. 842-843 [holding, in substance, that the provision’s immunity does not extend to liability arising from the exercise of its power contrary to its purpose]; Sargent v. Central Nat. Bank & Trust Co., supra, 809 P.2d at pp. 1301-1303 [same].) Hence, the immunity that it bestows may be characterized as absolute.
C
The Civil Rights Act of 1964 was enacted by Congress more than 35 years ago. Its Title VII, as stated, is denominated “Equal Employment Opportunity.”
*163 The purpose of Title VII is, broadly, to prevent discriminatory practices in employment based on certain grounds, and, if not, to eliminate any adverse effects resulting therefrom. (See, e.g., McKennon v. Nashville Banner Publishing Co. (1995) 513 U.S. 352, 358 [115 S.Ct. 879, 884, 130 L.Ed.2d 852].)
To this end, Title VII confers new rights and creates new remedies. (See, e.g., Alexander v. Gardner-Denver Co. (1974) 415 U.S. 36, 47-54 [94 S.Ct. 1011, 1019-1022, 39 L.Ed.2d 147].)
Specifically, Title VII confers on employees a right to be free from discrimination, at the hands of an employer, with respect to all matters including dismissal, on the ground of race, color, religion, sex, or national origin, and does so by implication. (See Civil Rights Act of 1964, § 703(a)(1), as amended, 42 U.S.C. § 2000e-2(a)(1).) The employer, among other things, must generally have 15 or more employees. (Civil Rights Act of 1964, § 701(b), as amended, 42 U.S.C. § 2000e(b).) All such employers are included with coverage—with the sole exception of the United States, any corporation wholly owned by the federal government, any Indian tribe, certain departments and agencies of the District of Columbia, and certain bona fide private membership clubs. (Ibid.)
Title VII also creates a remedy for violation of an employee’s right to be free from such discrimination by establishing certain delineated liability. (See, e.g., Civil Rights Act of 1964, § 706 et seq., as amended, 42 U.S.C. § 2000e-5 et seq.) Notably, it grants the employee a right of action, expressly in the courts of the United States, specifically the district courts (Civil Rights Act of 1964, § 706(f)(3), as amended, 42 U.S.C. § 2000e-5(f)(3)), and impliedly in the courts of the several states (Yellow Freight System, Inc. v. Donnelly (1990) 494 U.S. 820, 821, 823-826 [110 S.Ct. 1566, 1567, 1568-1570, 108 L.Ed.2d 834]), and does so subject to specified conditions defining, among other things, the time at which it arises and the time at which it passes away (e.g., Civil Rights Act of 1964, § 706(f)(1), as amended, 42 U.S.C. § 2000e-5(f)(1)). It allows the employee to obtain relief (e.g., Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C. § 2000e-5(g)), but does not permit all relief generally available (Landgraf v. USI Film Products (1994) 511 U.S. 244, 285, fn. 38 [114 S.Ct. 1483, 1507, 128 L.Ed.2d 229]), since, for example, it limits both compensatory and punitive damages (Civil Rights Act of 1991, § 102, 42 U.S.C. § 1981a(b), amending the Civil Rights Act of 1964).
In conferring new rights and creating new remedies, Title VII generally disclaims any preemptive effect on state law by expressly preserving such *164 law. (See Civil Rights Act of 1964, § 708, 42 U.S.C. § 2000e-7.) Indeed, it effectively incorporates any consistent state antidiscrimination law, with its rights and remedies, to function as its primary mechanism in achieving its purpose. (See, e.g., Civil Rights Act of 1964, § 706(c), (d), & (e), as amended, 42 U.S.C. § 2000e-5(c), (d), & (e).)
D
The Age Discrimination in Employment Act of 1967, or the ADEA, was enacted by Congress more than 30 years ago.
Like that of Title VII, the purpose of the ADEA is, broadly, to prevent discriminatory practices in employment based on a certain ground, and, if not, to eliminate any adverse effects resulting therefrom. (See, e.g., McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at p. 358 [115 S.Ct. at p. 884].)
To this end, the ADEA confers new rights (see, e.g., Trans World Airlines, Inc. v. Thurston (1985) 469 U.S. 111, 125 [105 S.Ct. 613, 623, 83 L.Ed.2d 523]), following the model of Title VII (e.g., McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at p. 358 [115 S.Ct. at p. 884]), and creates new remedies (see, e.g., Trans World Airlines, Inc. v. Thurston, supra, 469 U.S. at p. 125 [105 S.Ct. at p. 623]), incorporating by reference features of the Fair Labor Standards Act of 1938 (e.g., McKennon v. Nashville Banner Publishing Co., supra, 513 U.S. at pp. 357-358 [115 S.Ct. at p. 884]).
Specifically, the ADEA confers on employees a right to be free from discrimination, at the hands of an employer, with respect to all matters including dismissal, on the ground of age, and does so by implication. (See Age Discrimination in Employment Act of 1967, § 4(a)(1), as amended, 29 U.S.C. § 623(a)(1).) The employer, among other things, must generally have 20 or more employees. (Age Discrimination in Employment Act of 1967, § 11(b), as amended, 29 U.S.C. § 630(b).) All such employers are included within coverage—with the sole exception of the United States and any corporation wholly owned by the federal government. (Ibid.)
The ADEA also creates a remedy for violation of an employee’s right to be free from such discrimination by establishing certain delineated liability. (See, e.g., Age Discrimination in Employment Act of 1967, § 7 et seq., as amended, 29 U.S.C. § 626 et seq.) Notably, it grants the employee a right of action in “any court of competent jurisdiction” (Age Discrimination in Employment Act of 1967, § 7(c)(1), as amended, 29 U.S.C. § 626(c)(1)), whether state or federal (Gilmer v. Inter state/Johnson Lane Corp. (1991) 500 *165 U.S. 20, 29 [111 S.Ct. 1647, 1653, 114 L.Ed.2d 26]), and does so subject to specified conditions defining, among other things, the time at which it arises and the time at which it passes away (e.g., Age Discrimination in Employment Act of 1967, § 7(c)(1) and (d), as amended, 29 U.S.C. § 626(c)(1) and (d)). It allows the employee to obtain “such legal or equitable relief as will effectuate [its] purposes” (Age Discrimination in Employment Act of 1967, § 7(c)(1), as amended, 29 U.S.C. § 626(c)(1)), but does not permit all relief generally available (see Commissioner v. Schleier (1995) 515 U.S. 323, 325-326 [115 S.Ct. 2159, 2162, 132 L.Ed.2d 294]), since, for example, it limits compensatory damages (e.g., id. at p. 326 & fn. 2 [115 S.Ct. at p. 2162] [not permitting compensatory damages for pain and suffering or emotional distress]), and even bars punitive damages altogether (e.g., Bruno v. Western Elec. Co. (10th Cir. 1987) 829 F.2d 957, 966-967).
In conferring new rights and creating new remedies, the ADEA generally disclaims any preemptive effect on state law by impliedly preserving such law. (See Age Discrimination in Employment Act of 1967, § 14(a), 29 U.S.C. § 633(a).) Indeed, it effectively incorporates any consistent state antidiscrimination law, with its rights and remedies, to function as its primary mechanism in achieving its purpose. (See, e.g., Age Discrimination in Employment Act of 1967, §§ 7(d)(2) & 14(b), 29 U.S.C. §§ 626(d)(2) & 633(b).)
E
The California Fair Employment and Housing Act, or FEHA, was enacted by the Legislature 20 years ago in 1980, adding section 12900 et seq. to the Government Code. (Stats. 1980, ch. 992, § 4, p. 3140 et seq.) It repealed former section 1410 et seq. of the Labor Code (Stats. 1980, ch. 992, § 11, p. 3166), which had been added by the California Fair Employment Practice Act or FEPA in 1959 (Stats. 1959, ch. 121, § 1, p. 1999 et seq.). It also repealed former section 35700 et seq. of the Health and Safety Code (Stats. 1980, ch. 992, § 8, p. 3166), which had been added by the Rumford Fair Housing Act (or simply the Rumford Act) in 1963 (Stats. 1963, ch. 1853, § 2, p. 3823 et seq.). It proceeded substantially to reenact the provisions of FEPA and the Rumford Act and to consolidate them into itself. (E.g., Stevenson v. Superior Court (1997) 16 Cal.4th 880, 890-891 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; Rojo v. Kliger (1990) 52 Cal.3d 65, 72 [276 Cal.Rptr. 130, 801 P.2d 373]; Gelb & Frankfurt, California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination (1983) 34 Hastings L.J. 1055, 1057, fn. 12; see also Robinson v. Fair Employment & Housing Com. (1992) 2 Cal.4th 226, 235 & fn. 9 [5 Cal.Rptr.2d 782, 825 P.2d 767] [speaking of FEPA provisions only].)
*166 By its own declaration, FEHA constitutes an “exercise of the police power of the state for the protection of the welfare, health, and peace of [its] people . . . (Gov. Code, § 12920.)
The purpose of FEHA is, broadly, to prevent discriminatory practices in employment and housing based on certain grounds, and, if not, to eliminate any adverse effects resulting therefrom. (See Gov. Code, § 12920; see also Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114] [speaking of employment discrimination only]; Walnut Creek Manor v. Fair Employment & Housing Com. (1991) 54 Cal.3d 245, 261 [284 Cal.Rptr. 718, 814 P.2d 704] [speaking of housing discrimination only].)
To this end, FEHA “confer[s] . . . new rights and create[s] new remedies . . . .” (Rojo v. Kliger, supra, 52 Cal.3d at p. 82; accord, Stevenson v. Superior Court, supra, 16 Cal.4th at p. 900; see City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143, 1157 [77 Cal.Rptr.2d 445, 959 P.2d 752]; Jennings v. Marralle (1994) 8 Cal.4th 121, 123 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)
With particular regard to employment, FEHA confers on employees a right to be free from discrimination, at the hands of an employer, with respect to all matters including dismissal, on the ground of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age, and does so expressly. (Gov. Code, § 12921; see id., § 12940, subd. (a); see also id., § 12941 [specifying age-over-40 as one such ground]; see generally Farmers Ins. Group v. County of Santa Clara (1995) 11 Cal.4th 992, 1014, fn. 12 [47 Cal.Rptr.2d 478, 906 P.2d 440]; Caldwell v. Montoya (1995) 10 Cal.4th 972, 989, fn. 9 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) The employer, among other things, must generally have five or more employees. (Gov. Code, § 12926, subd. (d).) All such employers are included within coverage—with the sole exception of a religious association or corporation not organized for private profit. (Id., § 12926, subd. (d).)
FEHA also creates a remedy for violation of an employee’s right to be free from such discrimination by establishing certain delineated liability. (See, e.g., Gov. Code, § 12960 et seq.) Notably, it grants the employee a right of action in the superior court or the municipal court, and does so subject to specified conditions defining, among other things, the time at which it arises and the time at which it passes away. (Id., § 12965, subd. (b).) It allows the employee to obtain “all relief generally available,” specifically “in noncontractual actions” (Commodore Home Systems, Inc. v. *167 Superior Court (1982) 32 Cal.3d 211, 221 [185 Cal.Rptr. 270, 649 P.2d 912]; accord, Peralta Community College Dist. v. Fair Employment & Housing Com. (1990) 52 Cal.3d 40, 45 [276 Cal.Rptr. 114, 801 P.2d 357]), including “unlimited compensatory and punitive damages” (Murillo v. Rite Stuff Foods, Inc. (1998) 65 Cal.App.4th 833, 842 [77 Cal.Rptr.2d 12]; see Peralta Community College Dist. v. Fair Employment & Housing Com., supra, 52 Cal.3d at p. 45; Commodore Home Systems, Inc. v. Superior Court, supra, 32 Cal.3d at p. 221).
F
Let us now turn to the question on review, namely, whether, in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA.
At the outset, we state what we believe hardly needs statement. We do not seek the meaning of a statute or a statutory provision in isolation. (E.g., Calatayud v. State of California (1998) 18 Cal.4th 1057, 1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) Rather, we do so by looking to the “entire scheme of law of which it is part . . . .” (Clean Air Constituency v. California State Air Resources Bd. (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) Indeed, we look beyond neighboring law to the law as a whole. (See Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.).) For “[t]o seek the meaning of a statute” or a statutory provision is “to discern” its “sense ... in the legal . . . culture” itself {ibid., italics omitted), which, of course, encompasses the law generally.
When we consider section 24, Fifth, in conjunction with Title VII and the ADEA, as we ought, as part of the law as a whole,[3] we find at least apparent conflict. In pertinent part, section 24, Fifth, grants a national bank the unlimited power to dismiss any of its officers at pleasure by its board of directors. It thereby bestows absolute immunity from liability arising from its exercise. But, in pertinent part, Title VII and the ADEA confer on officers of a national bank, as employees, a right against dismissal on the ground of race, color, religion, sex, national origin, or age. They also create a remedy - for its violation.
Against at least apparent conflict, we seek, if we can, to harmonize section 24, Fifth, on the one side, and Title VII and the ADEA, on the other, in order *168 to avoid any actual conflict, and, if we cannot, to recognize that the earlier statutory provision has been impliedly amended or even repealed by the later statutes in order to bring the conflict to resolution (see, e.g., Parsons Steel, Inc. v. First Alabama Bank (1986) 474 U.S. 518, 523-524 [106 S.Ct. 768, 771, 88 L.Ed.2d 877] [implied repeal]; St. Martin Lutheran Church v. South Dakota (1981) 451 U.S. 772, 778 [101 S.Ct. 2142, 2146, 68 L.Ed.2d 612] [implied amendment or repeal]; In re Manuel L. (1994) 7 Cal.4th 229, 235-236 [27 Cal.Rptr.2d 2, 865 P.2d 718] [implied repeal]; People v. Leong Fook (1928) 206 Cal. 64, 69-70 [273 P. 779] [implied amendment or repeal]), but then only to the extent necessary and no further (e.g., Silver v. New York Stock Exchange (1963) 373 U.S. 341, 357 [83 S.Ct. 1246, 1257, 10 L.Ed.2d 389] [implied repeal]; Governing Board v. Mann (1977) 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1] [same]).
Despite our efforts, we are unable to harmonize section 24, Fifth, on the one side, and Title VII and the ADEA, on the other, in order to avoid any actual conflict. As stated, section 24, Fifth, grants a national bank the unlimited power to dismiss any of its officers at pleasure by its board of directors. As also stated, it bestows absolute immunity from liability arising from its exercise. For their part, Title VII and the ADEA effectively deny a national bank the power to dismiss any of its officers, by its board of directors or otherwise, on the ground of race, color, religion, sex, national origin, or age. They also effectively withdraw immunity from liability arising from its exercise on any such ground. The grant of unlimited power and bestowal of absolute immunity by section 24, Fifth, cannot be reconciled with even a partial denial of power or withdrawal of immunity by Title VII and the ADEA. One cannot reasonably read section 24, Fifth, with its unlimited power and absolute immunity, to allow an exception for the later enacted Title VII and the ADEA: The unlimited power and absolute immunity of section 24, Fifth, are antithetical even to their partial denial and withdrawal by Title VII and the ADEA. Similarly, one cannot reasonably read Title VII and the ADEA to allow an exception for the earlier enacted section 24, Fifth: Title VII and the ADEA do not refer to section 24, Fifth, expressly. Neither do they even allude to it by implication. Furthermore, although they exclude certain employers from coverage, they do not exclude national banks.
Unable to harmonize section 24, Fifth, and Title VII and the ADEA, we must recognize that section 24, Fifth, has been impliedly amended or even repealed by Title VII and the ADEA in order to resolve the conflict. And we believe that we need recognize only its implied amendment rather than its implied repeal. As impliedly amended by Title VII and the ADEA, section 24, Fifth, grants a national bank a limited power to dismiss any of its officers *169 at pleasure by its board of directors, not extending to dismissal on the ground of race, color, religion, sex, national origin, or age. And, as impliedly amended by Title VII and the ADEA, section 24, Fifth, bestows a qualified immunity from liability arising from its exercise, allowing only specified relief, with limits and/or bars against compensatory and/or punitive damages.[4]
With that said, we may presently answer the question whether, in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA.
There is no express preemption of FEHA by section 24, Fifth, as impliedly amended by Title VII and the ADEA. The provision itself does not contain the requisite explicit language. Its implied amendment by the cited statutes has not changed a word.
There is also no field preemption of FEHA by section 24, Fifth, as impliedly amended by Title VII and the ADEA. Speaking generally, we can say that the National Bank Act of 1864 as a whole “is not a comprehensive statutory scheme occupying the entire field relating to national banks.” *170 (Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 688; see Perdue v. Crocker National Bank, supra, 38 Cal.3d at pp. 937-938; see also Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 33 [116 S.Ct. at p. 1109] [recognizing the “power” of the states “to regulate national banks”].) Speaking specifically, we can say the same about section 24, Fifth, itself. For such “grants of . . . ‘powers’ to national banks” have historically been interpreted as “grants of authority” that do not “ordinarily pre-empt[]” state law generally, but only such state law as is “contrary” thereto. (Barnett Bank of Marion Cty., N.A. v. Nelson, supra, 517 U.S. at p. 32 [116 S.Ct. at p. 1108].) The implied amendment of the provision by the cited statutes has not affected it in any material way.
There is, nevertheless, conflict preemption of FEHA by section 24, Fifth, as impliedly amended by Title VII and the ADEA.
True, it may not be “impossible” for a national bank “to comply with both” section 24, Fifth, as impliedly amended by Title VII and the ADEA, and FEHA. (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2275].) For example: FEHA effectively prohibits dismissal of an officer by a national bank on the ground of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age; it likewise allows an officer to obtain relief against a national bank in the case of such dismissal. But section 24, Fifth, as impliedly amended by Title VII and the ADEA, does not command any national bank to dismiss any officer on any of the grounds identified in FEHA; neither, apparently, does it bar any national bank from affording any relief to any officer dismissed on any such ground.
But FEHA may nevertheless “stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives” (Hines v. Davidowitz, supra, 312 U.S. at p. 67 [61 S.Ct. at p. 404]) underlying section 24, Fifth, as impliedly amended by Title VII and the ADEA.
In order to further the integrity and stability of national banks as institutions in appearance and reality, section 24, Fifth, as impliedly amended by Title VII and the ADEA, grants a national bank the limited power to dismiss any of its officers at pleasure by its board of directors, not extending to dismissal on the ground of race, color, religion, sex, national origin, or age. To the same end, it bestows qualified immunity from liability arising from its exercise, allowing only specified relief, with limits and/or bars against compensatory and/or punitive damages.
In part, FEHA merely limits a national bank’s power to dismiss an officer at pleasure by its board of directors in duplication of the limitation of section *171 24, Fifth, as impliedly amended by Title VII and the ADEA, on the ground of race, religious creed (which is evidently synonymous with religion), color, national origin, sex, age, or ancestry (insofar as it is reducible to race, color, national origin, etc.). But, in other part, it would further limit the power so as not to extend to dismissal on the ground of physical disability, mental disability, medical condition, marital status, or ancestry (insofar as it is not reducible to race, color, national origin, etc.). Such a further limitation would “reduce the power” itself. (Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 692.) In this way, it would hinder attainment of the end for which the power was granted.
Similarly, in part, FEHA merely qualifies the immunity arising from a national bank’s exercise of its power to dismiss an officer at pleasure by its board of directors in duplication of the qualification of section 24, Fifth, as impliedly amended by Title VII and the ADEA, to the extent that it allows relief, as specified, that does not offend the limits and/or bars against compensatory and/or punitive damages. But, in other part, it would further qualify the immunity so as to allow all relief generally available, including unlimited compensatory and punitive damages. Such a further qualification would “inhibit” the exercise of the power. (Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 692.) In this way, it too would hinder attainment of the end for which the power was granted.
It may indeed be true that FEHA does not “stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives” (Hines v. Davidowitz, supra, 312 U.S. at p. 67 [61 S.Ct. at p. 404]) underlying Title VII and the ADEA, by which section 24, Fifth, has been impliedly amended. For it appears that Title VII (see Civil Rights Act of 1964, § 708, 42 U.S.C. § 2000e-7; see also California Federal S. & L. Assn. v. Guerra (1987) 479 U.S. 272, 282 [107 S.Ct. 683, 690, 93 L.Ed.2d 613] (plur. opn. by Marshall, J.)) and the ADEA (see Age Discrimination in Employment Act of 1967, § 14, 29 U.S.C. § 633; see also Simpson v. Providence Washington Ins. Group (9th Cir. 1979) 608 F.2d 1171, 1175 (per Kennedy, J.), affg. Simpson v. Alaska State Com'n for Human Rights (D. Alaska 1976) 423 F.Supp. 552, 555-556) establish only a minimum level of protection for employees that FEHA may not fail to reach. (See generally English v. General Electric Co., supra, 496 U.S. at pp. 89-90 [110 S.Ct. at p. 2281]; Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams (2d Cir. 1990) 899 F.2d 1315, 1323-1324; New York St. Soc. of Orthopaedic Surgeons v. Gould (E.D.N.Y. 1992) 796 F.Supp. 67, 73-74; see also Prudential Ins. Co. of America v. Lai (9th Cir. 1994) 42 F.3d 1299, 1303, fn. 1 [stating that “[p]arallel state anti-discrimination laws are explicitly made part of Title VII’s enforcement scheme”].)
It does not follow, however, that FEHA may not “stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives” *172 (Hines v. Davidowitz, supra, 312 U.S. at p. 67 [61 S.Ct. at p. 404]) underlying section 24, Fifth, as impliedly amended by Title VII and the ADEA. That is because section 24, Fifth, as impliedly amended by Title VII and the ADEA, effectively establishes a maximum level of protection for officers of a national bank that FEHA may not exceed: It grants a national bank a power to dismiss any of its officers at pleasure by its board of directors, limited only against dismissal on the ground of race, color, religion, sex, national origin, or age. And it bestows an immunity from liability arising from its exercise, qualified to allow only specified relief, with limits and/or bars against compensatory and/or punitive damages.[5]
The conflict preemption of FEHA by section 24, Fifth, as impliedly amended by Title VII and the ADEA, means this: As impliedly amended by Title VII and the ADEA, section 24, Fifth, preempts FEHA to the extent that it conflicts, but it does not to the extent that it does not. The reason is this: Conflict preemption of state law by federal law does not automatically and necessarily result in the complete displacement of state law by federal law in its entirety. Rather, it does so insofar (English v. General Electric Co., supra, 496 U.S. at p. 79 [110 S.Ct. at p. 2281]), but only insofar (Dalton v. Little Rock Family Planning Services, supra, 516 U.S. at p. 476 [116 S.Ct. at p. 1064] (per curiam)), as there is conflict.
Therefore, section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that, unlike Title VII and the ADEA, FEHA confers on officers of a national bank a right against dismissal on the ground of physical disability, mental disability, medical condition, marital status, or ancestry (insofar as it is not reducible to race, color, national origin, etc.). Here, there is conflict.
But section 24, Fifth, as impliedly amended by Title VII and the ADEA, does not preempt FEHA to the extent that, like Title VII and the ADEA, FEHA confers on officers of a national bank a right against dismissal on the ground of race, religious creed (which is evidently synonymous with religion), color, national origin, sex, age, or ancestry (insofar as it is reducible to race, color, national origin, etc.). Here, there is no conflict.
Also, section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that, unlike Title VII and the ADEA, FEHA creates a remedy for violation of the right of an officer of a national bank against dismissal on the ground of physical disability, mental disability, *173 medical condition, marital status, or ancestry (insofar as it is not reducible to race, color, national origin, etc.), in the form of any relief whatsoever, including, of course, unlimited compensatory and punitive damages. Here too, there is conflict.
But section 24, Fifth, as impliedly amended by Title VII and the ADEA, does not preempt FEHA to the extent that, like Title VII and the ADEA, it creates a remedy for violation of the right of an officer of a national bank against dismissal on the ground of race, religious creed (which is evidently synonymous with religion), color, national origin, sex, age, or ancestry (insofar as it is reducible to race, color, national origin, etc.), in the form of relief, as specified, that does not offend the limits and/or bars against compensatory and/or punitive damages.[6]
In a word, section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that it conflicts, but it does not to the extent that it does not.
Not inconsistent with our analysis is the discussion by the Marques court, which focuses on the extent to which section 24, Fifth, as impliedly amended by Title VII and the ADEA, does not preempt FEHA insofar as it is not in *174 conflict, specifically with regard to the right that FEHA confers on employees against dismissal on grounds including national origin, sex, and age. (See Marques v. Bank of America, supra, 59 Cal.App.4th at pp. 359-364.) Concededly, it does not express any acknowledgment that section 24, Fifth, as impliedly amended by Title VII and the ADEA, in fact preempts FEHA insofar as it is in conflict. But neither does it imply any denial thereof. We decline to read it differently.
Inconsistent with our analysis, however, is the discussion by both the majority and the dissenting justice in the Court of Appeal below. Each is too extreme. As for the majority, their opinion is not at all unsound in its focus on the extent to which section 24, Fifth, which we have concluded has been impliedly amended by Title VII and the ADEA, preempts FEHA insofar as it is in conflict, specifically with regard to the remedy that FEHA creates in the form of all relief generally available, including unlimited compensatory and punitive damages. But their opinion is indeed unsound in its implication that section 24, Fifth, which they failed to recognize has been impliedly amended by Title VII and the ADEA, preempts FEHA completely and in its entirety. As for the dissenting justice, her opinion is similarly not at all unsound in its focus on the extent to which section 24, Fifth, which she recognized has been impliedly amended by Title VII and the ADEA, does not preempt FEHA insofar as it is not in conflict, specifically with regard to the right that FEHA confers against dismissal on grounds including race and age. But her opinion too is indeed unsound in its implication that section 24, Fifth, which she fails to recognize has only been impliedly amended by Title VII and the ADEA and not superseded, does not preempt FEHA in any part or aspect whatsoever.[7]
In arriving at our conclusion, we are mindful that the national banking system created by the National Bank Act of 1864 was meant to be one “with uniform operation” within the “territorial limits of the United States.” (Talbott v. Silver Bow County, supra, 139 U.S. at p. 443 [11 S.Ct. at p. 596].) Our conclusion does not in any way undermine such a system. Insofar as FEHA *175 conflicts with section 24, Fifth, as impliedly amended by Title VII and the ADEA, it is preempted. To that extent, it cannot threaten national uniformity. But, insofar as FEHA does not conflict with section 24, Fifth, as impliedly amended by Title VII and the ADEA, it is not preempted. To that extent, it does not threaten national uniformity. For, to that extent, it merely duplicates what the Marques court properly declared to be the uniform “national standard enunciated” in Title VII and the ADEA, by which section 24, Fifth, has been impliedly amended—a standard that incorporates FEHA, with its rights and remedies, to the extent that it is consistent, to function as the primary mechanism in achieving the purpose of Title VII and the ADEA. (Marques v. Bank of America, supra, 59 Cal.App.4th at p. 363.)
In concluding that section 24, Fifth, preempts FEHA completely and in its entirety, Justice Brown implies, at the outset, that appreciable “decisional authority” supports her position. (Dis. opn. of Brown, J., post, at p. 183.) A careful and precise review of such authority, which is present in our analysis (see ante, fns. 4, 6, & 7 on pp. 169, 173, & 174) but absent from hers, shows that such support ranges between minimal and nonexistent. She then puts forth two reasons—“one grounded in congressional intent and policy, the other in pragmatics.” (Dis. opn. of Brown, J., post, at p. 185.) The first reason involves both a disagreement with the fact that section 24, Fifth, has been impliedly amended by Title VII and the ADEA, and also a belief that a national bank cannot operate without unlimited power to dismiss any of its officers at pleasure by its board of directors and without absolute immunity from liability arising from its exercise. The disagreement, however, is hardly serious, in evident, if unspoken, recognition of the absence of support in reason or authority. In addition, the belief founders on reality, seeing that, in the more than 30 years since the enactment of Title VII and the ADEA, national banks, like Bank of America here, have operated, quite successfully, with what they themselves have understood to be only limited power and qualified immunity. The second reason involves a desire for national uniformity. The desire is understandable. The national uniformity desired, however, is a will-o’-the-wisp. It is incompatible generally with the fact that, “since” before the “passage of the . . . National Bank Act,” “regulation of [national] banking has been one of dual” “federal-state” “control.” (National State Bank, Elizabeth, N.J. v. Long, supra, 630 F.2d at p. 985.) It is also incompatible specifically with the fact that Title VII and the ADEA, by which section 24, Fifth, has been impliedly amended, each incorporate any consistent state antidiscrimination law, with its rights and remedies, to function as its primary mechanism in achieving its purpose. To be sure, as the United States Supreme Court made plain in Shaw v. Delta Air Lines, Inc. (1983) 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490], to conclude that federal law does not preempt state law completely and in its entirety “may *176 cause certain practical problems.” (Id. at p. 105 [103 S.Ct. at p. 2904].) But as it also made plain therein, such “problems are the result of congressional choice and should be addressed by congressional action.” (Id. at p. 106 [103 S.Ct. at p. 2904].)
In concluding that section 24, Fifth, preempts FEHA completely and in its entirety, Justice Kennard, for her part, invokes the just cited Shaw v. Delta Air Lines, Inc. Curiously so. The result that the United States Supreme Court reached there is similar to the result that we reach here, that is, federal law preempts state law to the extent that it conflicts, but it does not to the extent that it does not. Shaw’s underlying proposition is to the effect that otherwise expressly preemptive federal law does not preempt state law that other federal law incorporates. It follows, a fortiori, that section 24, Fifth, which is not expressly preemptive, does not preempt FEHA, which Title VII and the ADEA incorporate to the extent that it is consistent. True, in reaching its result, the court impliedly rejected a “simplistic ‘double saving clause’ argument.” (Shaw v. Delta Air Lines, Inc., supra, 463 U.S. at p. 101, fn. 22 [103 S.Ct. at p. 2902].) But no such “double saving clause” argument, or even a “single saving clause” argument, is present here. Contrary to Justice Kennard’s assertion, the federal law on which the court focused simply did not “contain[]” any “self-imposed limitation on its preemptive force” (cone, and dis. opn. of Kennard, J., post, at pp. 182-183), but only a circumscription of its scope with respect to other federal law.[8]
III
We pass at this time to the decision of the Court of Appeal, which affirmed the judgment of the superior court on its order granting Bank of America’s motion for summary judgment against Peatros’s complaint as amended.
At the threshold, the Court of Appeal majority did not err when they subjected the superior court’s order granting Bank of America’s summary judgment motion, as they evidently did, to independent review. “Rulings on such motions are examined de novo.” (Buss v. Superior Court (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Including, as here, rulings granting such motions. (E.g., Silva v. Lucky Stores, Inc. (1998) 65 *177 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382]; Lenane v. Continental Maritime of San Diego, Inc. (1998) 61 Cal.App.4th 1073, 1079 [72 Cal.Rptr.2d 121].)
But, on the merits, the Court of Appeal majority did indeed err when they sustained the superior court’s order granting Bank of America’s summary judgment motion.
To be sure, the Court of Appeal majority were right to conclude that section 24, Fifth, was applicable. As stated, Wells Fargo holds: The provision requires a national bank to exercise its power to dismiss an officer, meaning “president,” “vice president,” “cashier,” or “other officer[],” with resulting immunity, by its board of directors; it prohibits the board to delegate the power; but it allows the board to employ the power not only directly, by acting itself, but also indirectly, by authorizing or ratifying action by an agent. (Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at pp. 1094-1104.) Here, under the undisputed facts, Bank of America dismissed Peatros as an officer, specifically, a vice-president, by its board of directors, not by delegation to Brown and/or others, but by ratification of a prior managerial demotion from officer to nonofficer in which Brown and perhaps others participated. As a vice-president, she was one of the officers expressly enumerated by the provision, whether or not she would be included among its “other officers” solely by virtue of her work as a branch manager. Likewise, under the undisputed facts, Bank of America dismissed Peatros altogether by its board of directors, not by delegation to Brown and/or others, but by ratification of a prior administrative termination mandated by its policy on extended medical absences. When it dismissed her altogether, she was not an officer and hence was not within the ambit of section 24, Fifth. But when it dismissed her as an officer, she surely was. As stated, the power to dismiss an officer includes the greater power to dismiss a person who is an officer and also the lesser power to dismiss the person as an officer. The bank now asserts that Peatros’s extended medical absence prevented the effectiveness of its earlier dismissal of her as an officer until its later dismissal of her altogether. Such fact, if fact it be, is apparently not included among those that are undisputed.
The Court of Appeal majority, however, were wrong to conclude that section 24, Fifth, preempts FEHA completely and in its entirety. As we have explained, section 24, Fifth, has been impliedly amended by Title VII and the ADEA. As impliedly amended by Title VII and the ADEA, section 24, Fifth, does indeed preempt FEHA to the extent that it conflicts—here, to the extent that it creates a remedy in the form of all relief generally available, including unlimited compensatory and punitive damages. But, as impliedly amended by Title VII and the ADEA, section 24, Fifth, does not preempt *178 FEHA to the extent that it does not conflict—here, to the extent that it confers a right against dismissal on grounds including race and age.
In support of the Court of Appeal majority, Bank of America presents arguments that fail against our analysis as set forth above. For example, it asserts in substance that section 24, Fifth, which it effectively admits has been impliedly amended by Title VII and the ADEA, amounts to a “comprehensive statutory scheme occupying the entire field relating to national banks” (Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 688), or at least the entire field relating to their powers, and thereby preempts FEHA completely and in its entirety. We have already concluded otherwise. In making its claim to the contrary, it does so only in passing, and does not follow through. It also asserts in substance that, prior, to its implied amendment by Title VII and the ADEA, section 24, Fifth, would have preempted FEHA (had it then existed) completely and in its entirety. But today, after its implied amendment by Title VII and the ADEA, section 24, Fifth, does not. Finally, and fundamentally, it asserts that section 24, Fifth, even as impliedly amended by Title VII and the ADEA, preempts FEHA completely and in its entirety as threatening national uniformity. Not so. We state here what we have stated above. Insofar as FEHA conflicts with section 24, Fifth, as impliedly amended by Title VII and the ADEA, it is preempted. To that extent, it cannot threaten national uniformity. But, insofar as FEHA does not conflict with section 24, Fifth, as impliedly amended by Title VII and the ADEA, it is not preempted. To that extent, it does not threaten national uniformity. For, to that extent, it merely duplicates what the Marques court properly declared, and the bank itself effectively admits, to be the uniform “national standard enunciated” in Title VII and the ADEA, by which section 24, Fifth, has been impliedly amended—a standard, we repeat, that incorporates FEHA, with its rights and remedies, to the extent that it is consistent, to function as the primary mechanism in achieving the purpose of Title VII and the ADEA. (Marques v. Bank of America, supra, 59 Cal.App.4th at p. 363.)
For her part, the Court of Appeal dissenting justice was wrong to conclude that section 24, Fifth, which she recognized has been impliedly amended by Title VII and the ADEA, does not preempt FEHA in any part or aspect whatsoever. To state it once more: Although section 24, Fifth, as impliedly amended by Title VII and the ADEA, does not preempt FEHA to the extent that it does not conflict, it does to the extent that it does.
In support of the Court of Appeal dissenting justice, Peatros presents arguments that fail against our analysis as set forth above. For example, she asserts in substance that, in and of itself, section 24, Fifth, grants a national *179 bank the power to dismiss any of its officers at pleasure by its board of directors against the restraints of contract only but not those of law, including FEHA. The power that the provision grants has been characterized as unlimited. As such, it operates generally against all restraints, legal as well as contractual. In urging her point, Peatros directs our view back from section 24, Fifth, through its proximate source in section 5136 of title 62 of the Revised Statutes of 1878, to its ultimate source in section 8 of the National Bank Act of 1864. Section 8, however, helps her not at all. For its background suggests, according to commentary on which she herself relies, that the power that it granted, it granted against the restraints of law as well as those of contract. (See Sinclair, Employment at Pleasure: An Idea Whose Time Has Passed, supra, 23 U. Tol. L.Rev. at pp. 540-541 [stating that, at the time at which the National Bank Act of 1864 was enacted, “if an employment contract was not for a definite term, then it was presumed” at law “to be for a year”; and that, in light thereof, the “original purpose” of the “ ‘at pleasure’ language” of section 8 “was to enable banks to remove officers who otherwise would be entitled, by law, to remain at least until the end of the year”].) From all that appears, section 8 was concerned with the existence of restraints that might otherwise affect the power that it granted, and not with their nature or source—including perhaps uncontemplated state antidiscrimination statutes. So to conclude accords fully with its purpose of promoting national banks as institutions and of furthering their integrity and stability in appearance and reality.
IV
For the reasons stated above, we conclude that we must reverse the judgment of the Court of Appeal, and must remand the cause to that court with directions to reverse the judgment of the superior court and remand the cause in turn to that court for further proceedings.
It is so ordered.
Werdegar, J., and Haning, J.,* concurred.

 The “three circumstances” in which preemption of state law by federal law is found should not be understood to be “rigidly distinct. Indeed, field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress’ intent (either express or plainly implied) to exclude state regulation.” (English v. General Electric Co., supra, 496 U.S. at pp. 78 & 79-80, fn. 5 [110 S.Ct. at pp. 2274, 2275-2276]; accord, Gade v. National Solid Wastes Management Assn. (1992) 505 U.S. 88, 104, fn. 2 [112 S.Ct. 2374, 2386, 120 L.Ed.2d 73]; Smiley v. Citibank, supra, 11 Cal.4th at p. 148, fn. 3.)

 The wisdom of the policy underlying what is now section 24, Fifth, has been questioned in recent years. It has been argued that the provision, “designed to protect bank customers in the days before Federal deposit insurance, has no place in the modern banking industry, which needs to be able to offer certain employment prospects in order to attract management personnel of high quality.” (Kemper v. First Nat. Bank in Newton (1981) 94 Ill.App.3d 169, 171 [418 N.E.2d 819, 821].) The Marques court was evidently persuaded: “Needless to say, public trust in” a national bank “is no longer based primarily on community confidence in the personal integrity of its individual officers.” (Marques v. Bank of America, supra, 59 Cal.App.4th at p. 363, fn. 5.) It nevertheless declined to act: “It is up to Congress ... to decide whether the . . . provision has therefore become entirely obsolete.” (Ibid.) Whether or not the Marques court was right to be' persuaded, it was surely right to decline to act. It is not the role of a court to “reconsider" the provision’s underlying “policy .... That task is for Congress”—and for Congress alone. (Kemper v. First Nat. Bank in Newton, supra, 94 Ill.App.3d at p. 172 [418 N.E.2d at p. 821]; see Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1099.) It may be noted that, although, after codification, Congress has often amended the neighbors of section 24, Fifth, and has done so materially (see hist. notes, 12 U.S.C.A. (1989 ed.) foll. § 24, pp. 38-43; hist. notes, 12 U.S.C.A. (1999 supp.) foll. § 24, p. 8), it has never amended the provision itself in any way.

Compare In re Sweeney (Bankr. N.D. Ohio) 113 B.R. 359, 364 (holding to the effect that a court must consider section 24, Fifth, in conjunction with the antidiscrimination provisions of the Bankruptcy Reform Act of 1978, as amended, which are codified at title 11 of the United States Code).

 See Mueller v. First Nat. Bank of the Quad Cities (C.D.Ill. 1992) 797 F.Supp. 656, 663 (holding to the effect that section 24, Fifth, has been impliedly amended by Title VII); see also Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at page 694 (rejecting a claim against a national bank with fewer than 20 employees that section 24, Fifth, has been impliedly repealed by the ADEA, reasoning that they are not in conflict inasmuch as the ADEA covers only employers with 20 or more employees; stating in dictum that, “arguably,” section 24, Fifth, has been impliedly repealed by the ADEA to the extent that they are, in fact, in conflict); compare Ana Leon T. v. Federal Reserve Bank of Chicago (6th Cir. 1987) 823 F.2d 928, 931 (per curiam) (dealing with section 4, Fifth, of the Federal Reserve Act, as amended, codified at section 341, Fifth, of title 12 of the United States Code, its common designation, which, in line with the model of section 24, Fifth, grants a federal reserve bank the power to “dismiss” any of its officers, among others, “at pleasure” by its board of directors: holding to the effect that section 341, Fifth, has been impliedly amended by Title VII); Moodie v. Federal Reserve Bank of New York (S.D.N.Y. 1993) 835 F.Supp. 751, 752-753 (consistent with such a holding); Moodie v. Federal Reserve Bank of New York (S.D.N.Y. 1993) 831 F.Supp. 333, 337 (same); Scott v. Federal Reserve Bank of New York (S.D.N.Y. 1989) 704 F.Supp. 441, 447-448 (same); White v. Fed. Res. Bank (1995) 103 Ohio App.3d 534, 538-539 [660 N.E.2d 493, 496] (same); Osei-Bonsu v. Federal Home Loan Bank of New York (S.D.N.Y. 1989) 726 F.Supp. 95, 97-98 (dealing with section 12 of the Federal Home Loan Bank Act, as amended, as codified at section 1432(a) of title 12 of the United States Code, its common designation, which, in line with the model of section 24, Fifth, grants a federal home loan bank the power to “dismiss” any of its officers, among others, “at pleasure” by its board of directors: holding to the effect that section 1432(a) has been impliedly amended by Title VII). But compare Bollow v. Federal Reserve Bank of San Francisco (9th Cir. 1981) 650 F.2d 1093, 1100 (holding, in the context of section 341, Fifth, that the “mere existence” of federal “age-discrimination laws,” apparently including the ADEA, “does not create” a “property interest” protected by the due process clause of the Fifth Amendment to the United States Constitution in the form of “job entitlements for government employees over a certain age”).

In stating that section 24, Fifth, as impliedly amended by Title VII and the ADEA, effectively establishes a maximum level of protection for officers of a national bank that FEHA may not exceed, we assume for present purposes that the provision has not been impliedly amended or repealed by other federal law. See post, footnote 8 on page 176.

See Booth v. Old Nat. Bank, supra, 900 F.Supp. at pages 842-843 (holding, outside of the context of Title VII or the ADEA, that section 24, Fifth, preempts state law to the extent, but only to the extent, that it conflicts); Sargent v. Central Nat. Bank & Trust Co., supra, 809 P.2d at pages 1301-1303 (same); compare Moodie v. Federal Reserve Bank of New York, supra, 835 F.Supp. at pages 752-753 (holding to the effect that section 341, Fifth, as impliedly amended by Title VII, preempts state law to the extent, but only to the extent, that it conflicts); Moodie v. Federal Reserve Bank of New York, supra, 831 F.Supp. at page 337 (holding to the same effect); id. at page 336 (disagreeing with what it takes to be the contrary “pronouncement” in Ana Leon T. v. Federal Reserve Bank of Chicago, supra, 823 F.2d at p. 931 (per curiam)); White v. Fed. Res. Bank, supra, 103 Ohio App.3d at pages 538-539 [660 N.E.2d at page 496] (holding to the effect that section 341, Fifth, as impliedly amended by Title VII, preempts state law to the extent, but only to the extent, that it conflicts); id. at page 537 [660 N.E.2d at page 495] (declining to rely on with what it takes to be the contrary “holding” in Ana Leon T.); compare also Ana Leon T. v. Federal Reserve Bank of Chicago, supra, 823 F.2d at page 931 (per curiam) (holding, outside of the context of Title VII or the ADEA, to the effect that section 341, Fifth, preempts conflicting state law); Bollow v. Federal Reserve Bank of San Francisco, supra, 650 F.2d at page 1098 (same); Inglis v. Feinerman (9th Cir. 1983) 701 F.2d 97, 99 (holding similarly as to 12 United States Code section 1432(a)); Kispert v. Federal Home Loan Bank (S.D. Ohio 1991) 778 F.Supp. 950, 952-953 (same, relying on Ana Leon T. and its treatment of section 341, Fifth). But see Wiskotoni v. Michigan Nat. Bank-West (6th Cir. 1983) 716 F.2d 378, 387 (stating in dictum, outside of the context of Title VII or the ADEA, that section 24, Fifth, has “consistently been construed ... as preempting state law governing employment relations between a national bank and its officers,” without limitation as to only conflicting state law); Alfano v. First National Bank of Highland (1985) 111 A.D.2d 960, 961 [490 N.Y.S.2d 56, 58] (following Wiskotoni in holding to such effect); compare Osei-Bonsu v. Federal Home Loan Bank of New York, supra, 726 F.Supp. at pages 97-98 (holding to the effect that section 1432(a), as impliedly amended by Title VII, preempts state law, without limitation as to only conflicting state law).

To the extent that other discussion by other courts may be read to support the proposition that section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA even insofar as FEHA is not in conflict with Title VII or the ADEA (see Wiskotoni v. Michigan Nat. Bank-West, supra, 716 F.2d at p. 387 [stating in dictum, outside of the context of Title VII or the ADEA, that section 24, Fifth, has “consistently been construed ... as preempting state law governing employment relations between a national bank and its officers,” without limitation as to only conflicting state law]; Alfano v. First National Bank of Highland, supra, 111 A.D.2d at p. 961 [following Wiskotoni in holding to such effect]; cf. Osei-Bonsu v. Federal Home Loan Bank of New York, supra, 726 F.Supp. at pp. 97-98 [holding to the effect that 12 United States Code section 1432(a), as impliedly amended by Title VII, preempts state law, without limitation as to only conflicting state law]), it is unsound for the reasons stated in the text.

In this cause, we have considered only whether section 24, Fifth, preempts FEHA in the face of Title VII and the ADEA—not whether it preempts it in the face of other federal law, such as the Americans with Disabilities Act of 1990, which is codified at section 12101 et seq. of title 42 of the United States Code, and especially title I thereof, denominated “Employment.” In so doing, we have concluded only that section 24, Fifth, has been impliedly amended by Title VII and the ADEA—not whether it has been impliedly amended or repealed by such other law. These and similar issues await resolution another day.

Associate Justice of the Court of Appeal, First District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.