

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2006

# Fasano v. Fed Rsrv Bank NY

Precedential or Non-Precedential: Precedential

Docket No. 05-4661

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Fasano v. Fed Rsrv Bank NY" (2006). *2006 Decisions.* Paper 538.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/538

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4661

———

MAUREEN FASANO

v.

FEDERAL RESERVE BANK OF NEW YORK; RON
HENRY;
CYNTHIA RAMOS; LEROY HOPE; DOTTIE BOYD; KIM
RUSSO; LISA YOUNG; MERTHA JAKUBISZEN,

Appellants

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-0672)
District Judge: Honorable Jose L. Linares

———

Argued June 29, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R.
GIBSON,* Circuit Judges.

———

*Honorable John R. Gibson, United States Circuit Judge for
the Eighth Circuit, sitting by designation.

(Filed: August 3, 2006)

Thomas Baxter, Jr.
Michele H. Kalstein (Argued)
Barry M. Schindler
Federal Reserve Bank of New York
33 Liberty Street, 7th Floor
New York, NY 10045
*Counsel for Appellant Federal Reserve Bank of New York*

Andrew Dwyer (Argued)
Dwyer & Dunnigan, LLC
17 Academy Street, Suite 1010
Newark, NJ 07102
*Counsel for Appellee*

Frank A. Chernak
Ballard, Sphar, Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, PA 19103
*Counsel for Amicus Curiae*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>.

Appellant Federal Reserve Bank of New York brings this interlocutory appeal of the District Court's refusal to find

2

appellee Maureen Fasano's employment claims, based on New Jersey state law, preempted by the Federal Reserve Act, 12 U.S.C. § 341(Fifth). For the reasons set forth below, we will reverse and remand with instructions to dismiss Fasano's Complaint.

## I.

## A. Federal Reserve Banks

Because the nature of Federal Reserve Banks is at issue in this case, we begin by briefly describing their history and function. The Federal Reserve Bank of New York ("New York Fed") is one of twelve Federal Reserve Banks governed by the Federal Reserve Act ("FRA"), 12 U.S.C. § 221 *et seq.* The Federal Reserve Banks were established by Congress in 1913 to be the "monetary and fiscal agents of the United States." *First Agric. Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339, 356 (1968) (Marshall, J., dissenting). *See also* Federal Reserve Act of 1913, Pub. L. No. 63-43, 38 Stat. 251. To aid in achieving Congress's goal of insulating them from political pressure, the Federal Reserve Banks are formed as corporations. 12 U.S.C. § 341. Within their respective designated territories, the Federal Reserve Banks supervise and maintain the nation's banking system, examine the national[1] and state banks that have

---

[1]Federal Reserve Banks are not "national banks." "National bank" denotes banks such as Citibank or Bank of America, organized under the National Bank Act. 12 U.S.C. § 21 *et seq.* Before the passage of the Federal Reserve Act, national banks formerly performed essential governmental monetary functions

purchased memberships in the Federal Reserve System, 12 U.S.C. §§ 325, 481 *et seq.*, and clear checks and deposits between depository institutions. 12 U.S.C. § 360.

The individual Federal Reserve Banks serve as the foundation for the Federal Reserve System. The presidents of the New York Fed and four other Federal Reserve Banks, along with the Board of Governors of the Federal Reserve System ("Board of Governors"), constitute the Federal Open Market Committee, 12 U.S.C. § 263, charged by Congress with: "maintain[ing] long run growth of the monetary and credit aggregates commensurate with the economy's long run potential to increase production, so as to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates." 12 U.S.C. § 225a. The individual Federal Reserve Banks carry out the monetary policy so formulated. The Board of Governors, comprising seven Presidential appointees, 12 U.S.C. § 241, loosely oversees the Federal Reserve Banks' operations. 12 U.S.C. § 248(j). The Board of Governors is empowered to levy assessments on the Federal Reserve Banks to pay expenses, 12 U.S.C. § 243, and issue governing regulations, *see*, *e.g.*, 12 U.S.C. § 248-1.

The Federal Reserve Banks are intimate parts of the Government's fiscal structure. In addition to acting as the

---

such as issuing currency. The Federal Reserve Banks have now taken over these functions, leaving little difference between national banks and state-chartered banks. We will attempt to be as precise as possible when referring to "national banks" as opposed to Federal Reserve Banks.

4

Government's fiscal agent, the Federal Reserve Banks serve as the depository for the United States Treasury. 12 U.S.C. § 391. The United States, while not a capital stockholder in the Federal Reserve Banks, is the residual interest-holder in the unlikely event of a Federal Reserve Bank's liquidation. 12 U.S.C. § 290. Congress has on occasion treated the Federal Reserve Banks as the Government's own rainy day fund, directing, for example, the payment of $3.7 billion to the United States Treasury in 2000. 12 U.S.C. § 289; *see also* Pub. L. No. 103-66, § 3002(b), 107 Stat. 337 (1993) (directing payment of $106 Million to United States Treasury in 1997; $107 Million to United States Treasury in 1998). Collectively, the Federal Reserve Banks carry out the functions of the United States' central bank – issuing and maintaining legal tender, i.e., Federal Reserve Notes; acting as repository of Government funds; and interacting with foreign countries' central banks.

While placed by law in a home city, each Federal Reserve Bank spans at least three states, and eleven are under the territorial jurisdiction of more than one United States Circuit Court of Appeals. The New York Fed has responsibility for all of New York, Puerto Rico, and the United States Virgin Islands, and parts of New Jersey and Connecticut.

## B. Instant Dispute

Turning to the matter at hand, Maureen Fasano worked in the New York Fed's East Rutherford, New Jersey office from

2000-2002.[2]  Fasano initially worked as a currency verification operator and junior operator, handling and washing currency. This involved, *inter alia*, lifting heavy materials one day a week. On August 15, 2001, Fasano realized that she had not been paid for overtime she had recorded on her time sheet.  On bringing this to the attention of a supervisor, Fasano saw that her time sheet had been altered and was told that because no other employees had submitted overtime, she would not be paid for it. Fasano met with several supervisors to discuss her complaints, and was told that she *would* be paid for the overtime; the supervisors allegedly asked her not to speak of the incident with any other employee.  Fasano claims a co-worker later told her the supervisors would try to make Fasano quit for causing "trouble."

In September, 2001, Fasano met with the New York Fed's Human Resources Department to complain that her pay was too low for her seniority, and that she had not received a standard raise.  She also met with another supervisor, who asked whether she thought she was being "prejudiced" against; Fasano responded "yes."

In late November, 2001, Fasano was transferred to a "floater" position, where she was assigned to different rooms and did heavy lifting each day.  Fasano had a preexisting neck injury that had not previously impacted her employment despite the one-day-a-week heavy lifting, and Type 1 diabetes that

---

[2]For the purpose of this appeal from a motion to dismiss, we recite the facts regarding Fasano's underlying employment claims as stated in her Complaint.

necessitated frequent eating. Fasano believed that her supervisors at the New York Fed knew of each condition, and (1) assigned her to the floater position in the hope that she would injure herself; and (2) prevented her from taking breaks during her shift to eat. At one point, Fasano complained to supervisors that the new position was "killing her."

On December 18, 2001, Fasano injured her back and allegedly went on long-term disability leave. According to the New York Fed, Fasano never fully applied for disability benefits, and never responded to a letter sent to her on July 2, 2002, notifying her that she must either return to work or file a completed benefits application. Fasano was thereafter terminated on July 31, 2002.

Fasano then filed this suit in the New Jersey Superior Court against the New York Fed and various employees, both in their official and individual capacities, alleging (1) retaliation, in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq.* (West 2006); (2) failure to accommodate, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1 *et seq.* (West 2006); and (3) retaliation, in violation of the LAD. The New York Fed removed the case to the United States District Court for the District of New Jersey on February 14, 2003, pursuant to 12 U.S.C. § 632, and filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction due to preemption by the Federal Reserve Act; and Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

7

On March 31, 2004, the District Court denied the New York Fed's Rule 12(b)(1) motion, concluding that a Federal Reserve Bank is not a federal instrumentality but is instead treated as a private corporation, and that the Federal Reserve Act did not preempt any state employment laws, even if they imposed additional burdens and liabilities beyond federal law (as did CEPA and LAD). The District Court also denied the New York Fed's Rule 12(b)(6) motion as to all claims. Following initial discovery, the New York Fed filed counterclaims based on Fasano's failure to disclose a private business venture before, during, and after her employment.[3]

The New York Fed then filed a motion for reconsideration, which the District Court denied on August 9, 2005. However, the District Court noted a wide split in authority among courts around the country and a recent contrary holding by a district court in the Eastern District of Pennsylvania finding preemption in a nearly-identical case involving the Federal Reserve Bank of Philadelphia. The District Court thus granted certification of the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[4] We

[3]These counterclaims are not part of this appeal. We reject Fasano's argument that by removing the case to the District Court and filing counterclaims, the New York Fed "conceded" that subject matter jurisdiction existed and waived its preemption arguments.

[4]The exact question certified by the District Court was "whether the Federal Reserve Bank is immune from state employment discrimination law claims, particularly whether the

8

granted permission to appeal on September 23, 2005. On March 14, 2006, we granted the motion of the other 11 Federal Reserve Banks to proceed as Amici Curiae.

## II.

The District Court had jurisdiction pursuant to 12 U.S.C. § 632, which provides that all civil suits against Federal Reserve Banks are "deemed to arise under the laws of the United States . . . ; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court . . . ." We have jurisdiction over the interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We exercise plenary review over issues of subject matter jurisdiction, including preemption. *Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 708 (3d Cir. 1994).

## III.

The New York Fed contends that by virtue of the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, the Federal Reserve Act preempts either wholly or in part the application of New Jersey's CEPA and LAD to a Federal Reserve Bank. In the interest of clarity, we will begin with a brief summary of the possible forms of preemption, and

FRA preempts state anti-discrimination laws." *Dist. Ct. Op. (Aug. 9, 2005)* at \*12. The New York Fed did not request reconsideration or certification of the denial of its Fed.R.Civ.P. 12(b)(6) motion to dismiss, and consequently we will not consider the substantive merits of Fasano's claims.

9

then address that alleged by the New York Fed.

In normal preemption cases, we apply the familiar analysis set forth by the Supreme Court in *English v. General Electric Co.*, 496 U.S. 72 (1990). *See*, *e.g.*, *Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d 134 (3d Cir. 2004). We recognize three forms of preemption – express, field, and conflict. "First, Congress can define explicitly the extent to which its enactments pre-empt state law." *English*, 496 U.S. at 78. "Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79.

> "Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* (citations and quotation marks omitted). The presumption remains *against* conflict preemption under *English* where, as here, the area of law is not traditionally exclusively federal. *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 268 (3d Cir. 2004).

On appeal, the New York Fed alleges conflict preemption instead of field and express preemption. We note, however, that because the distinction between field and conflict preemption is often blurry, cases and concepts addressing one may be helpful

10

regarding the other. *See*, *e.g.*, *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 348 (3d Cir. 2001); *see also English*, 496 U.S. at 79 n.5.

The New York Fed's argument is two-fold: First, it argues that *English* is inapplicable because of the Federal Reserve Banks' alleged status as protected federal instrumentalities. Under this rationale, preemption is presumed, absent explicit authorization of suit or application of state law by Congress. "Where Congress does not affirmatively declare its *instrumentalities or property* subject to regulation, the federal function must be left free of regulation." *Hancock v. Train*, 426 U.S. 167, 179 (1976),[5] *substantive holding superseded by statute*

---

[5]Fasano reads *Hancock* and a later Supreme Court case, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), as setting down a preemption rule solely for federally-owned *facilities*. While it is certainly true that both of these cases explicitly addressed federal facilities, Fasano ignores the Supreme Court's language extending the rule equally to both "instrumentalities or property," *Hancock*, 426 U.S. at 179. *See also Goodyear*, 496 U.S. at 188 n.1 (White, J., dissenting) (noting that "[t]he Court recognizes, and I agree, that under our precedents the [federally-owned] facility here . . . must be treated as a federal instrumentality for the purpose of applying the Supremacy Clause"). The District Court correctly noted the consequential equivalence of federal facilities and instrumentalities with regard to entitlement to presumptive preemption. *Dist. Ct. Op. (Mar. 31, 2004)* at \*6. We refer to *Hancock* and *Goodyear* not to establish that the New York Fed *is* a federal instrumentality, but to explain the *consequences* of such instrumentality status.

11

Pub. L. No. 95-96, § 116, 91 Stat. 711 (1977), (emphasis added) (citation and quotation marks omitted).  Second, the New York Fed argues that even if we apply normal *English* conflict preemption, CEPA and LAD impermissibly conflict with 12 U.S.C. § 341 of the Federal Reserve Act, which grants the Federal Reserve Banks the power to dismiss "at pleasure" any employee, at least to the extent that CEPA and LAD impose burdens going beyond those already imposed by *federal* anti-discrimination laws.

For the reasons we will now discuss, we conclude that under either of these approaches – searching for Congressional authorization for suit versus intent to preempt – Fasano's Complaint must be dismissed as preempted by the Federal Reserve Act.

IV.

While not dispositive here, we first address the New York Fed's allegation that Federal Reserve Banks are federal instrumentalities, entitled to presumptive preemption of state law claims.  Fasano urges us to uphold the District Court's conclusion that the Federal Reserve Banks are instead mere private corporations.  Equating "instrumentality" with "federal agency," the District Court placed near-dispositive reliance on a Guidance issued by the Equal Employment Opportunity Commission ("EEOC") in 1993 regarding the proper procedures for filing federal discrimination charges against Federal Reserve Banks, but which required classifying Federal Reserve Banks as either "federal agencies" or "private employers."  While it acknowledged that Federal Reserve Banks have been

12

characterized as federal instrumentalities, the District Court limited such cases to taxation. We ultimately need not determine, for the purposes of this case, whether Federal Reserve Banks are federal instrumentalities in the employment law field. Even were we to find such instrumentality status, suits would be permitted up to the level authorized by Congress. As we explain below, Congress has authorized suits based on *federal* anti-discrimination laws, and we see no principled distinction between such suits and suits based on state anti-discrimination laws that are *exactly* analogous to those federal laws. CEPA and the LAD, however, are far from coincident with the ADA and federal whistleblower statutes. Thus, suit based on CEPA and the LAD would lie outside any authorization of Congress.

Because this is the same conclusion we reach using the standard *English* preemption analysis, we decline to formally reach here whether Federal Reserve Banks should be considered federal instrumentalities. We note, however, that strong arguments have been made in favor of such status.[6]

---

[6]Indeed, several Circuits have found the Federal Reserve Banks to be federal instrumentalities, albeit in the context of immunity from taxation. *See*, *e.g.*, *Scott v. Fed. Reserve Bank of Kansas City*, 406 F.3d 532 (8th Cir. 2005) (reaffirming *Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1*, 657 F.2d 183 (8th Cir. 1981), a taxation case, in the context of the general application of the Federal Rules of Appellate Procedure); *Fahey v. O'Melveny & Myers*, 200 F.2d 420 (9th Cir. 1983); *Fed. Reserve Bank v. Comm'r of Corps. & Taxation*, 520 F.2d 221 (1st Cir. 1975) (reaffirming that Federal Reserve Banks are federal

13

Instrumentality jurisprudence has never been characterized by particular clarity. However, the District Court's decision rested, in several respects, on infirm ground. First, the EEOC Guidance is of questionable relevance. The EEOC's 1993 *Enforcement Guidance on Coverage of Federal Reserve Banks* (No. N-915-002) addressed whether Federal Reserve Banks were "private employers covered by the private sector provisions" of Title VII, or instead "executive agencies covered under the federal sector provisions." Purely for the purpose of clarifying which procedures govern the filing and disposition of complaints, the EEOC concluded that the Federal Reserve Banks were "private employers." However, the EEOC in that matter was presented with only two choices – "executive agency" or "private employer." Contrary to Fasano's assertions on appeal, we have more than two available choices in our lexical pantheon. The New York Fed does not claim to be *part* of the United States Government, but instead an instrumentality thereof. We thus discern little persuasive value in the EEOC's determination simply that Federal Reserve Banks are not "executive agencies" within the specific meaning of federal

---

instrumentalities, as held in *Fed. Reserve Bank of Boston v. Comm'r of Corps. & Taxation*, 499 F.2d 60 (1st Cir. 1974)). We note, however, the decisions of the Massachusetts, New York, Wisconsin, Washington, and Des Moines Human Rights or Equal Rights commissions, all disclaiming *employment* discrimination jurisdiction over Federal Reserve Banks because of their status as federal instrumentalities. *See Br. of Amici Curiae Federal Reserve Banks* at 14-16.

statutes.[7]  Whether or not an entity is a federal instrumentality for Supremacy Clause analysis is a different question from whether an instrumentality is a federal agency for a specific statute.

We also take issue with the contention that federal instrumentalities do not exist beyond the field of taxation.  *See*, *e.g.*, *United States Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736 (2004) (Postal Service is a federal instrumentality for antitrust purposes); *Federal Land Bank v. Priddy*, 295 U.S. 229 (1935) (federal land banks held at the time to be federal instrumentalities for attachment of property purposes).  Moreover, while we acknowledge that the Supreme Court has been less than crystal clear in elucidating a test for federal instrumentalities, the mere fact that the Federal Reserve Banks are organized in the corporate form does not itself prevent them from being federal instrumentalities.  As the New York Fed correctly notes, the Bank of the United States in the bedrock case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), was found to be a federal instrumentality despite its corporate status.

Furthermore, Federal Reserve Banks indeed possess many of the hallmarks of federal instrumentalities.  *Emergency*

---

[7]For similar reasons, we reject reliance on *Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982), wherein the Ninth Circuit held Federal Reserve Banks not to be covered under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, as that statute defines "federal agency" and "federal instrumentality" especially narrowly.

15

*Fleet Corp. v. Western Union Tel. Co.*, 275 U.S. 415, 425-26 (1928) ("Instrumentalities like the national banks or the federal reserve banks, in which there are private interests, are not departments of the Government. They are private corporations in which the Government has an interest."). For example, Federal Reserve Banks are surely "virtually . . . an arm of the Government." *Dep't of Employment v. United States*, 385 U.S. 355, 359-60 (1966) (finding the Red Cross to be a federal instrumentality). Like the Red Cross, Federal Reserve Banks are not profit-seeking enterprises. Ultimately, the Federal Reserve Banks are "not private business. The policy of the Federal Reserve Banks is governed by the policy of the United States with regard to them." *Am. Bank & Trust Co. v. Fed. Reserve Bank of Atlanta*, 256 U.S. 350, 359 (1921). Thus, we question the District Court's ultimate conclusion that Federal Reserve Banks are, by their nature, wholly private corporations.

As we have indicated, however, we are not required to reach the broader, albeit amply supportable, conclusion that the New York Fed is a federal instrumentality. As we discuss below, Fasano's Complaint must be dismissed as preempted by the Federal Reserve Act where the state grounds for the suit – CEPA and the LAD – impermissibly frustrate Congress's intent to provide the Federal Reserve Banks with the widest latitude possible in personnel decisions.

V.

It is the New York Fed's second argument – that suit alleging violations of New Jersey's CEPA and LAD conflicts with the Federal Reserve Act and is therefore preempted – that

16

we find dispositive. Both statutes indisputably impose substantive and procedural burdens well beyond those imposed by federal law, and thereby frustrate Congressional intent to provide the Federal Reserve Banks with relatively unfettered employment discretion. We will reverse on this ground, and remand for the dismissal of Fasano's Complaint.

In Part A to follow, we lay out the boundaries of the main preemptive language contained in the Federal Reserve Act, as implicitly amended by the ADA and the federal banking whistleblower statute, 12 U.S.C. § 1831j. In Part B, we adopt the holding of courts which have found conflict preemption where a state employment law grants greater substantive, procedural, or remedial protections than those already permitted by the ADA and 12 U.S.C. § 1831j. In Part C, we conclude that New Jersey's CEPA and LAD both go far beyond what is permitted by the Federal Reserve Act, and are therefore preempted as applied to the New York Fed.

## A. Federal Reserve Act § 341(Fifth)

We "start[] with the basic assumption that Congress did not intend to displace state law." *C.E.R. 1988, Inc.*, 386 F.3d at 268 (quoting *Bldg. & Const. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993)). Conflict preemption arises in the absence of specific preemption language, where an individual is unable to follow both federal and state laws simultaneously, or where the state law "would frustrate the federal scheme." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *see also English*, 496 U.S. at 79 ("where state law stands as an obstacle to the

17

accomplishment and execution of the full purposes and objectives of Congress"). We recently explained that "federal and state law need not be contradictory on their faces for preemption to apply. It is sufficient that the state law 'impose[s] . . . additional conditions' not contemplated by Congress." *Surrick v. Killion*, 449 F.3d 520, 2006 U.S. App. LEXIS 13618, at *31 (3d Cir. June 2, 2006) (quoting *Sperry v. Florida*, 373 U.S. 379, 385 (1963)) (alteration in original).

"Pre-emption fundamentally is a question of congressional intent." *English*, 496 U.S. at 78-79. Therefore, "the first step in determining whether . . . claims are preempted is to evaluate the statute and regulations for evidence of congressional intent." *C.E.R. 1988, Inc.*, 386 F.3d at 270.

The key preemptive language in the Federal Reserve Act is contained in 12 U.S.C. § 341(Fifth),[8] which states that a

---

[8]Consistent with past practice, we note that for the purpose of analyzing § 341(Fifth), we may look to analogous provisions of the Federal Home Loan Bank Act, 12 U.S.C. § 1432(a) ("and to dismiss at pleasure such officers, employees, attorneys, and agents"), the National Bank Act, 12 U.S.C. § 24(Fifth) ("dismiss such officers or any of them at pleasure"), and cases interpreting these statutes. *See Mele v. Fed. Reserve Bank*, 359 F.3d 251, 255 (3d Cir. 2004) (analyzing both Federal Reserve Act and Federal Home Loan Bank Act cases); *Kroske v. US Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *as amended* 2006 U.S. App. LEXIS 3367 (Feb. 13, 2006) (considering in parallel Federal Reserve Act and Federal Home Loan Bank Act); *Arrow v. Fed. Reserve Bank of St.*

Federal Reserve Bank shall have the power:

> "To appoint by its board of directors a president, vice presidents, and such officers and employees as are not otherwise provided for in this Act, to define their duties, require bonds for them and fix the penalty thereof, and to *dismiss at pleasure* such officers or employees." (emphasis added)

The New York Fed argues, consistent with the decisional law of several Circuits and other courts, that this "at pleasure" language precludes the application of state employment discrimination or whistleblower laws that restrict "at pleasure" dismissal, or, at the very least, preempts such state laws to the extent they impose *additional* burdens beyond federal law such as the ADA, which already apply to the Federal Reserve Banks. The District Court followed several other courts and concluded instead that no preemption occurred, regardless of the additional burdens imposed by CEPA and LAD above and beyond federal law, and regardless of the inconsistencies each Federal Reserve Bank would face from various state and local laws. According to this rationale, because Title VII applies to Federal Reserve Banks, then § 341(Fifth) permits employment discrimination laws to limit the Banks' discretion in firing. Therefore, the

---

*Louis*, 358 F.3d 392 (6th Cir. 2004) (noting identical holdings under Federal Reserve Act and National Bank Act); *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir. 1993) (citing Federal Reserve Act in support of ruling on Federal Home Loan Bank Act).

argument goes, state discrimination laws would not conflict with § 341(Fifth) *even if* the state laws impose additional burdens beyond federal law because they have a common purpose.

In order to fully analyze § 341(Fifth), we must also ask what effect, if any, the passage of the ADA and federal whistleblower statute had on this far older language in the Federal Reserve Act. Section 341(Fifth) was originally enacted almost a hundred years ago. Federal Reserve Act of 1913, Pub. L. No. 63-43, ch. 6, § 4, 38 Stat. 254. Subsequent amendment in 1935 left the original "at pleasure" language unchanged, and merely clarified that a president and vice presidents could be appointed.[9] Act of August 23, 1935, ch. 614, § 201, 49 Stat. 703. The ADA, by contrast, was enacted in 1990, Pub. L. No. 101-336, 104 Stat. 328, 42 U.S.C. § 12101 *et seq.*, and has been applied to Federal Reserve Banks. *See*, *e.g.*, *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379 (2d Cir. 1996). The federal banking whistleblower statute, 12 U.S.C. § 1831j, as applicable to Federal Reserve Banks, was enacted in 1991. Act of December 19, 1991, Pub. L. No. 102-242, § 251(a)(1)-(3), 105 Stat. 2331.

In order to reconcile the applicability of these federal

---

[9]As originally enacted, § 341(Fifth) read: "To appoint by its board of directors, such officers and employees as are not otherwise provided for in this Act, to define their duties, require bonds of them and fix the penalty thereof, and to dismiss at pleasure such officers or employees."

20

statutes *limiting* the Federal Reserve Banks' discretion in personnel decisions with § 341(Fifth)'s grant of broad power to dismiss employees "at pleasure," we are compelled to conclude that the ADA and 12 U.S.C. § 1831j impliedly amended § 341. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 989 (9th Cir. 2005), *as amended* 2006 U.S. App. LEXIS 3367 (Feb. 13, 2006); *Evans v. Fed. Reserve Bank of Phila.*, 2004 U.S. Dist. LEXIS 13265 (E.D. Pa. July 8, 2004); *Peatros v. Bank of Am.*, 990 P.2d 539 (Cal. 2000). We are aware that implicit amendment or repeal is rare in the law. "The cardinal rule is that repeals by implication are not favored." *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936). We may find such repeal or amendment only if "the two acts are in irreconcilable conflict, or [if] the later statute covers the whole ground occupied by the earlier and is clearly intended as a substitute for it . . . ." *Id.* at 504. We have said that "[w]henever possible, the two statutes should be read in order to give effect to both." *Tineo v. Ashcroft*, 350 F.3d 382, 391 (3d Cir. 2003).

We are concerned here only with the first category of implied amendment, as neither the ADA nor 12 U.S.C. § 1831j "covers the whole ground occupied" by Federal Reserve Act § 341. These statutes do, however, "irreconcilabl[y] conflict."

Section 341(Fifth) grants Federal Reserve Banks the absolute, unlimited power to dismiss an employee. The ADA and 12 U.S.C. § 1831j, on the other hand, *prohibit* a Federal Reserve Bank from dismissing an employee on the ground of a covered disability, from refusing to grant an employee's request for an accommodation, or from dismissing an employee for having filed a complaint alleging a violation of law. Thus, a

Federal Reserve Bank's absolute unconditioned legal right to dismiss under § 341(Fifth), is made *illegal* under the ADA and 12 U.S.C. § 1831j. Such a fundamental conflict is not "merely cosmetic," or one "that relates to anything less than the operative legal concepts." *Tineo*, 350 F.3d at 391.

We must conclude, therefore, that to the extent that the ADA and 12 U.S.C. § 1831j irreconcilably conflict with § 341(Fifth), these statutes have impliedly amended § 341(Fifth) to grant a Federal Reserve Bank "a *limited* power to dismiss any of its officers at pleasure by its board of directors, not extending to dismissal" on grounds prohibited by the ADA or 12 U.S.C. § 1831j. *Peatros*, 990 P.2d at 549-50. The corollary, as we conclude below, is that "as impliedly amended by [the ADA and 12 U.S.C. § 1831j, § 341(Fifth)] bestows a *qualified* immunity from liability arising from its exercise, allowing only specified relief, with limits and/or bars against compensatory and/or punitive damages." *Peatros*, 990 P.2d at 550. Our only remaining task is to determine whether, as impliedly amended by the ADA and 12 U.S.C. § 1831j, § 341(Fifth) of the Federal Reserve Act preempts the application of CEPA or the LAD to a Federal Reserve Bank's dismissal of an employee.

## B.  Federal Reserve Act Conflict Preemption

In determining whether the Federal Reserve Act preempts, either in whole or in part, New Jersey's CEPA and LAD, we wade into murky waters. Our own case law in the area is sparse. We held recently that the "at pleasure" language of § 341(Fifth) bars all *contractual* employment claims against a Federal Reserve Bank, *see Mele v. Fed. Reserve Bank*, 359 F.3d

22

251, 255 (3d Cir. 2004), but have not officially addressed the preemption of *statutory* employment claims. *Cf. Sheehan v. Anderson*, 2000 U.S. Dist. LEXIS 3048, at \*19 (E.D. Pa. Mar. 17, 2000), *aff'd* 263 F.3d 159 (3d Cir. 2001) (table) (holding that § 341(Fifth) "preempts any state created employment right," summarily affirmed).

We begin by surveying the limited case law around the country. The Sixth Circuit appears to be the only one of our sister Courts of Appeals to have addressed the preemption issue with regard to the Federal Reserve Act, but it provided no analysis to support its conclusion that a Federal Reserve Bank employee's state law employment discrimination claims "were preempted by federal law. Section 4, Fifth, of the Federal Reserve Act, 12 U.S.C. § 341, Fifth . . . preempts any state-created employment right to the contrary." *Ana Leon T. v. Fed. Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir. 1987). The Sixth Circuit has since reaffirmed this holding, but added no further explanation. *See Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004).

The well is a bit deeper with regard to national banks and Federal Home Loan Banks, which, as we have noted above, are governed by federal statutes with "at pleasure" clauses identical to that of § 341(Fifth). Two Circuits have explicitly found total preemption of state statutory employment law. The Fourth Circuit has held that "at pleasure" in the Federal Home Loan Bank Act completely preempts state law claims. *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 220 (4th Cir. 1993). The Sixth Circuit found similar total preemption would be accomplished by "at pleasure" in the National Bank Act.

23

*Wiskotoni v. Mich. Nat'l Bank-West*, 716 F.2d 378, 387 (6th Cir. 1983) (noting that § 24(Fifth) of the National Bank Act "has consistently been construed by both federal and state courts as preempting state law governing employment relations between a national bank and its officers and depriving a national bank of the power to employ its officers other than at pleasure"), *reaffirmed by Arrow*, 358 F.3d at 394. These "total preemption" holdings suggest that *any* state-created limitation on the bank's power would fundamentally, and irreconcilably, conflict with Congress's intent to grant total, unlimited discretion. *See Andrews*, 998 F.2d at 220 ("In this case, however, Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees. Any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress.").

Moderating these total preemption holdings are a variety of courts taking the more limited approach of partial conflict preemption of state employment laws. In general, these courts have concluded that § 341(Fifth) (and, analogously, provisions in the National Bank Act and National Home Loan Bank Act) preempts state laws only to the extent that the state laws provide additional remedies or liability *beyond* the federal anti-discrimination laws (such as Title VII or the ADEA) that have already impliedly amended § 341(Fifth). This has resulted in courts finding certain state laws to not be preempted, because those state laws exactly paralleled federal law. *See*, *e.g.*, *Kroske*, 432 F.3d at 989 ("Congress did not intend for § 24(Fifth) [of the National Bank Act] to preempt the WLAD employment discrimination provisions, *at least insofar as they are consistent* with the prohibited grounds for termination under

24

the ADEA.") (emphasis added); *Moodie v. Fed. Reserve Bank of New York*, 831 F. Supp. 333, 337 (S.D.N.Y. 1993) ("The New York State Human Rights Law, with provisions analogous to Title VII, creates no additional employment rights in conflict with the Bank's status as an employer at will, nor does it place additional constraints on the Bank's exercise of its statutory powers."). On the other hand, where the state law at issue went beyond the relevant federal law, courts do not hesitate to find conflict preemption. *See*, *e.g.*, *Evans*, 2004 U.S. Dist. LEXIS 13265 (Pennsylvania Human Relations Act preempted, as beyond ADEA or Title VII); *Peatros v. Bank of Am.*, 990 P.2d 539 (Cal. 2000) (California Fair Employment and Housing Act preempted to extent it conflicts with Title VII and ADEA).

It is this latter partial conflict preemption approach which we find persuasive, and count ourselves fortunate to have the benefit of a very well-reasoned opinion of Judge Padova of the Eastern District of Pennsylvania, issued after the District Court's initial opinion in the instant case. *See Evans*, 2004 U.S. Dist. LEXIS 13265. *Evans* involved an employee of the Federal Reserve Bank of Philadelphia who sued the Philadelphia Fed and various employees for alleged discrimination and retaliation. After surveying the same available case law we have referenced above, Judge Padova concluded that "the 'dismiss at pleasure' language in the Federal Reserve Act preempts the application of state anti-discrimination laws which expand the rights and remedies available under federal anti-discrimination laws." *Id.* at \*16. Because the Pennsylvania Human Relations Act at issue in *Evans* significantly expanded both the substantive and the procedural remedies available to a plaintiff relative to the remedies available under the ADEA and

25

Title VII, Judge Padova "dismiss[ed] Plaintiff's state law claims in their entirety." *Id.* at *21.

We adopt the same partial conflict preemption approach. We first reject the District Court's conclusion that *Mele* defined the outward limit of the preemptive power of "at pleasure," such that only contractual employment claims are preempted. *Mele* did not address statutory claims as we are faced with today, and did not so limit itself. Logically, "at pleasure" cannot be limited to contractual claims. As the Ninth Circuit has noted, "it would make little sense to allow state tort claims to proceed, where a former bank officer's contract claims are barred [by the National Bank Act]." *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 526 (9th Cir. 1989). The same rationale applies to permitting statutory claims where contractual claims would be barred – any discretion granted to the Federal Reserve Banks by Congress would be mooted by the possibility of having to face statutory employment claims. *See id.* ("The effect would be to substitute tort for contract claims, thus subjecting the national bank to all the dangers attendant to dismissing an officer. The purpose of the provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust.").

Federal Reserve Act § 341(Fifth), as impliedly amended by the ADA and 12 U.S.C. § 1831j, preempts *any* state employment law that goes beyond the remedies and protections provided by those federal laws. Such "additional" provisions – including provision for unlimited punitive damages, individual liability on the part of employees, and coverage of less severe disabilities – would conflict with Congress's intent to provide

26

Federal Reserve Banks with the broadest latitude possible in carrying out their statutory duties, while giving due recognition to the applicability of the ADA and 12 U.S.C. § 1831j's requirements. In this sense, additional state remedies surely "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79.

Moreover, as we recently noted in *Surrick*:

"If preemption only applied to state laws that directly contradict federal laws, federal laws could be effectively nullified by state laws prohibiting those acts that are incident to, but not specifically authorized by, federal law. Under such a regime, state officials would have a 'virtual power of review' over federal laws."

*Surrick*, 449 F.3d at ____, 2006 U.S. App. LEXIS 13618, at *32 (quoting *Sperry*, 373 U.S. at 385). Thus, broad state employment laws cannot apply to the Federal Reserve Banks when those state laws "prohibit[] those acts that are incident to" Federal Reserve Banks dismissing "at pleasure" their employees, within the bounds of the ADA and 12 U.S.C. § 1831j.[10]

---

[10]In such an intricate area of the law, we believe it is important to be clear about which statutes we are addressing. We reiterate that we are dealing with the direct preemptive effect of the Federal Reserve Act, § 341(Fifth), and not with the indirect preemptive effect of the ADA or 12 U.S.C. § 1831j. The ADA, for example, explicitly saves state anti-discrimination statutes from

In sum, we are persuaded that the wisest approach when faced with an entity undeniably crucial to the federal monetary system, to which Congress has clearly expressed the intent to grant the broadest possible power and right to dismiss employees, is to limit remedies to those already authorized by Congress. We need not take a position on whether state remedies exactly consonant with the ADA and 12 U.S.C. § 1831j would similarly offend "the full purposes and objectives of Congress." As we detail below, by no stretch of the imagination can CEPA or the LAD be said to "parallel" or "mirror" their federal counterparts.

## C. CEPA and LAD

Because § 341(Fifth) preempts state employment laws that provide remedies *beyond* those permitted in the ADA or 12 U.S.C. § 1831j, what remains is to determine whether CEPA or the LAD are indeed such expansive laws. We hold that they are, and are therefore preempted to the extent of these divergences. We will adopt the *Evans* approach and decline to usurp the New

---

direct preemption, and does not preempt the Federal Reserve Act. It would be a mistake, however, to argue that because the *ADA* preempts neither the Federal Reserve Act nor CEPA or LAD, the *Federal Reserve Act* cannot have such preemptive force. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 101 n.22 (1983) (argument "simplistic" and properly rejected); *Evans*, 2004 U.S. Dist. LEXIS 13265, at *19-20. Application of CEPA or the LAD frustrates the Congressional purpose behind *§ 341(Fifth)*, as impliedly amended by the ADA and 12 U.S.C. § 1831j. *See supra* Part V.A.

Jersey legislature's province by rewriting these state laws. Therefore, we will remand the case to the District Court with instructions to dismiss Fasano's Complaint.

Both the LAD and CEPA go well beyond their federal counterparts. *See Dist. Ct. Op. (Mar. 31, 2004)* at \*18-23. For example, neither the ADA nor 12 U.S.C. § 1831j[11] permit individual damages liability on the part of employees. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (ADA). The LAD permits the imposition of individual liability on an employee who has aided or abetted barred acts. *Tarr v. Ciasulli*, 853 A.2d 921 (N.J. 2004). Of particular importance to an employer, the LAD permits an employee to directly pursue a claim in Superior Court, without first pursuing an administrative complaint. *Hernandez v. Region Nine Hous. Corp.*, 684 A.2d 1385, 1389 (N.J. 1996).

The LAD unquestionably protects a broader range of

---

[11]While no Circuit appears to have directly held that 12 U.S.C. § 1831j does not permit individual liability, several District Courts have so held, with no contrary authority brought to our attention. *See*, *e.g.*, *Rouse v. Farmers State Bank*, 866 F.2d 1191 (N.D. Iowa 1994); *Hicks v. Resolution Trust Corp.*, 767 F. Supp. 167 (N.D. Ill. 1991). The Fifth Circuit has held that 12 U.S.C. § 1831j "applies only to the actors named in the statute," the only actors being certain types of *institutions*. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 503 (5th Cir. 1994). The District Court accepted that CEPA provided for individual liability, in contrast to 12 U.S.C. § 1831j. *Dist. Ct. Op. (Mar. 31, 2004)* at \*22.

"disabilities" or "handicaps" than the ADA. The ADA limits covered disabilities to those which "substantially limit[] one or more of the major life activities." 42 U.S.C. § 12102(2)(A). In contrast, Fasano would be able to prove disability under the LAD by merely showing, for example, "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness . . . any degree of paralysis, amputation, lack of physical coordination . . . or any mental, psychological or developmental disability . . . which prevents the normal exercise of any bodily or mental functions." N.J. Stat. Ann. § 10:5-5(q) (West 2006). The LAD, therefore, imposes a significantly "lower standard" than the ADA. *Failla v. City of Passaic*, 146 F.3d 149, 154 (3d Cir. 1998); *see also Motley v. New Jersey State Police*, 196 F.3d 160, 165 n.5 (3d Cir. 1999) (noting the "more stringent ADA standard"). *Accord Viscik v. Fowler Equip. Co.*, 800 A.2d 826 (N.J. 2002). The LAD also expands the recovery options available to a successful plaintiff. *See*, *e.g.*, *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (unlike ADA, a LAD award "may reflect any risk of nonpayment of a fee assumed by counsel" and apply a multiplier enhancement). LAD damages are uncapped. *Baker v. Nat'l State Bank*, 801 A.2d 1158, 1165-66 (N.J. Super. Ct. App. Div. 2002).

The differences are also apparent with respect to CEPA. CEPA provides extremely "broad protections against employer retaliation." *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1008 (N.J. 1998); *see also id.* ("[A]t the time of its enactment [CEPA was described as] the most far-reaching 'whistleblower statute' in the nation."). CEPA allows for individual employee liability, *Palladino ex rel. United States v. VNA of S. N.J., Inc.*, 68 F.

Supp. 2d 455, 474 (D.N.J. 1999), while as noted above, 12 U.S.C. § 1831j does not.  12 U.S.C. § 1831j protects a Federal Reserve Bank employee from retaliation for disclosing suspected wrongdoing to a very circumscribed list of entities: the Bank itself, a federal banking agency, or the Attorney General.  12 U.S.C. § 1831j(a)(2).  By contrast, CEPA permits an employee to complain to *any* public body, N.J. Stat. Ann. § 34:19-3 (West 2006), about virtually any topic, even those within the employee's own control.

In sum, Fasano's belated attempt to claim that the LAD and CEPA are merely parallel and consonant with the ADA and 12 U.S.C. § 1831j is meritless.  We conclude that both CEPA and the LAD provide remedies and substantive protections that go far beyond their federal analogs.  These additional provisions, by further limiting the New York Fed's ability to exercise the broad "dismiss at pleasure" discretion granted it by Congress, frustrate that Congressional purpose, and cannot be applied to Federal Reserve Banks due to conflict preemption.

The final matter we must address is whether our proper course of action is to dismiss Fasano's Complaint or to attempt to pare back CEPA and the LAD to exactly match the ADA and 12 U.S.C. § 1831j.

We conclude that we would be ill-suited for the latter task.  We agree with Judge Padova that instead of attempting to "essentially rewrite the relevant provisions of the [CEPA and LAD] to parrot Federal anti-discrimination law," and "risk frustrating the intent of the publicly elected legislature which enacted the [CEPA and LAD] in the first place," dismissal is

31

appropriate. *See Evans*, 2004 U.S. Dist. LEXIS 13265, at *21. There is simply no way to give full effect to such state laws while picking and choosing which parts of them may apply. For example, as noted above the LAD does not require exhaustion of administrative remedies; a plaintiff elects whether to proceed in the administrative arena, or in court, but a final decision in either forum is binding and renders the other forum unavailable. Were we to graft the ADA's exhaustion requirement onto the LAD, we would transform formerly final, binding administrative determinations into non-binding preliminaries to litigation. We will not step on the toes of the New Jersey legislature in this or any other like manner.

VI.

New Jersey undoubtedly has a very strong interest in requiring employers to abstain from discriminatory practices, the range of which New Jersey has chosen to define as broadly as possible. Nonetheless, "preemption analysis does not involve a balancing of state and federal interests. Once it is determined that there is a conflict between a valid federal law and a state law, the state law must give way." *Surrick*, 449 F.3d at ___, 2006 U.S. App. LEXIS 13618, at *36. State anti-discrimination laws that do not mirror their federal analogs cannot be validly applied to the New York Fed by virtue of conflict preemption with § 341(Fifth) of the Federal Reserve Act.

For the foregoing reasons, we conclude that Fasano's Complaint must be dismissed due to the preemption of her state law claims by the Federal Reserve Act. Accordingly, we will reverse and remand the case.